Jeffrey HECHT, Appellant,

v.

COMMERCE CLEARING HOUSE, INC.,
William Miller, Louis Ceccoli, and
Stanley Stephens, Appellees.

No. 418, Docket 89–7515.

United States Court of Appeals,
Second Circuit.

Argued Nov. 20, 1989.

Decided Jan. 25, 1990.

Michael Flomenhaft, New York City, for appellant.

David F. Graham, Sidley & Austin, New York City, for appellees Commerce Clearing House, Inc., William Miller, and Louis Ceccoli.

Before OAKES, Chief Judge, CARDAMONE, Circuit Judge, and POLLACK, District Judge.\*

OAKES, Chief Judge:

Jeffrey Hecht appeals an April 28, 1989, judgment of the United States District Court for the Southern District of New York, Shirley Wohl Kram, Judge, dismissing his complaint seeking civil remedies under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (1988), for failure to state a claim upon which relief can be granted and failure to plead with sufficient particularity. Assuming, as we must, that the allegations of the complaint are true, we nevertheless affirm the order of the district court.

In this case, we primarily consider whether an employee has civil RICO standing for injuries from loss of employment and business commissions resulting from his failure to aid or abet alleged RICO violations by his employer and co-employees targeted at the employer's customers.

Hecht began working in January 1985 at Commerce Clearing House ("CCH"), a publisher of various law and business publications, as a Candidate Sales Representative. Assuming the position previously held by defendant Stanley Stephens, and working under the supervision of defendants Louis Ceccoli and William Miller, Hecht was responsible for servicing existing subscriptions and promoting new business in an assigned geographical area.

After beginning work at CCH, Hecht allegedly learned of various fraudulent acts committed by defendants and their agents, including forging customer signatures on orders, billing customers for fabricated or improperly confirmed orders, and disregarding subscription cancellation requests. Some customers advised Hecht that they would make no further purchases from CCH until the allegedly irregular practices were rectified. Hecht demanded that these practices be corrected, but was told by Ceccoli and Miller that he must either cooperate with the concealment of these frauds or lose his job. Upon refusing to cooperate, Hecht was terminated for insubordination.

Hecht filed a complaint on December 24, 1986, and an amended complaint on August 3, 1987, seeking recovery against CCH and the individual defendants under RICO's civil liability treble damages provision, 18 U.S.C. § 1964(c) (1988), as well as under common law theories of prima facie tort

\* Of the United States District Court for the Southern District of New York, sitting by designation.

and fraud. He based his RICO claim on allegations that the defendants violated 18 U.S.C. § 1962 (1988)[1] through participation as an enterprise in fraudulent acts constituting mail fraud under 18 U.S.C. § 1341 (1988) and wire fraud under 18 U.S.C. § 1343 (1988) and qualifying as RICO predicate acts of "racketeering activity" under 18 U.S.C. § 1961(1) (1988).

The district court, in *Hecht v. Commerce Clearing House, Inc.*, 713 F.Supp. 72 (S.D. N.Y.1989), found that whether or not Hecht's injuries resulted from his "blowing the whistle" and insisting on correction of defrauded customer accounts or from his simple refusal not to participate in the frauds, his injuries were not proximately caused by either defendants' racketeering conduct in violation of 18 U.S.C. § 1962(a)–(c) or defendants' racketeering conspiracy in violation of 18 U.S.C. § 1962(d). On this basis, the district court concluded Hecht had no standing to assert civil claims. In the alternative, the district court found that Hecht failed to plead a RICO conspiracy adequately. Finally, the district court dismissed the pendent common law claims as lacking sufficient federal jurisdictional basis.

On appeal, Hecht advances two theories of standing. First, he argues that defendants' racketeering conduct violating section 1962(c) proximately caused him to lose not only his job but also business commissions, thus distinguishing his case from the line of cases relied on by the district court. Second, he argues that an overt act in furtherance of defendants' conspiracy to racketeer was his discharge from employment and that such an act suffices to create civil liability under section 1962(d). Hecht also argues that he properly pleaded a RICO conspiracy, and that, even if he did not, he should be permitted to amend his complaint.

## DISCUSSION

■ The RICO civil liability provision confers standing on "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Thus, in order to have standing, a plaintiff must show: (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation. *See O'Malley v. O'Neill*, 887 F.2d 1557, 1561 (11th Cir.1989).

■ This appeal principally concerns the last element: causation. Because a plaintiff must show injury "by the conduct constituting the violation" of RICO, *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), the injury must be caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts. *See Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1100 (2d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). Moreover, the RICO pattern or acts must *proximately* cause plaintiff's injury. *See Sperber v. Boesky*, 849 F.2d 60, 64 (2d Cir.1988); *O'Malley*, 887 F.2d at 1561. By itself, factual causation (e.g., "cause-in-fact" or "but for" causation) is not sufficient. *See Sperber*, 849 F.2d at 63. We recognize that determining what is the proximate cause of an injury is not free from normative legal policy considerations. *See id.* (citing to W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* 264 (5th ed. 1984); *Restatement (Second) of Torts* § 431 comment a (1965); Howarth, *"On Madness of Discourse, That Cause Sets Up with and Against Itself!"* (Book Review), 96 Yale L.J. 1389, 1394–95 (1987). For our purposes, the RICO pattern or acts proximately cause a plaintiff's injury if they are a substantial factor in the se-

---

**1.** Section 1962, RICO's substantive provision, outlaws in separate subsections four types of racketeering-related activities. Section 1962(a) prohibits using income received from a "pattern of racketeering activity" to acquire an interest in or establish an enterprise engaged in or affecting interstate commerce. Section 1962(b) proscribes the acquisition or maintenance of

any interest in an enterprise "through" a pattern of racketeering activity. Section 1962(c) prohibits conducting or participating in the conduct of an enterprise through a pattern of racketeering activity. Section 1962(d) proscribes conspiring to violate subsection (a), (b), or (c). Section 1962(c) and (d) are the principal provisions at issue in this case.

quence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence. *See Bonsignore v. City of New York*, 683 F.2d 635, 637 (2d Cir.1982); *Restatement (Second) of Torts* §§ 431, 435 comment b (1965).

### 1. *Standing for Defendants' Section 1962(c) Violation*

██ Hecht's first ground of appeal is that racketeering conduct violating section 1962(c) caused him injury in the form of lost business commissions. This injury is too speculative to confer standing, because Hecht only alleges that he would have lost commissions in the future, and not that he has lost any yet. Even assuming that Hecht actually lost commissions, we hold that his injury was not proximately caused by violations of section 1962(c).

██ We previously have held that loss of employment (as distinct from loss of commissions) for reporting or refusing to participate in an enterprise engaging in a pattern of racketeering activity is not injury sufficient for standing. *See Burdick v. American Express Co.*, 865 F.2d 527, 529 (2d Cir.1989) (per curiam) (no standing for a stockbroker who alleged being fired and losing his client base for complaining about his employer's questionable practices); *see also O'Malley*, 887 F.2d at 1563 (no standing for vice president and dean of private university fired for refusing to participate in mail fraud scheme); *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1216 (5th Cir. 1988) (no standing for employee constructively discharged for refusing to participate in fraudulent loan transactions); *Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201, 1204–05 (1st Cir.1987) (no standing for whistle-blowing employee constructively discharged for reporting fraudulent securities transactions); *Nodine v. Textron, Inc.*, 819 F.2d 347, 348–49 (1st Cir. 1987) (no standing for employee fired for

registering objections to employer's customs law violations); *Morast v. Lance*, 807 F.2d 926, 932–33 (11th Cir.1987) (no standing for bank vice president fired after reporting irregular transactions to authorities); *cf. Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 635–37 (2d Cir. 1989) (no standing for employee suffering intimidation and harassment for whistle-blowing activities). *But see Callan v. State Chem. Mfg. Co.*, 584 F.Supp. 619, 622–23 (E.D.Pa.1984) (pre-*Sedima* finding of standing for employee fired for refusing to participate in bribery). These cases underscore that the purpose of civil RICO liability does not extend to deterring any illegal act such as retaliatory firings for which there are state and common law remedies. "A defendant is not liable for treble damages to everyone he might have injured by conduct other than that prohibited by RICO." *Norman*, 873 F.2d at 636. Although Hecht's loss of employment may have been factually caused by defendants' RICO violations, it was not a foreseeable natural consequence sufficient for proximate causation.

For similar reasons, Hecht's injury from loss of commissions does not confer standing. *See Burdick*, 865 F.2d at 529 (no standing for stockbroker impeded by employer's frauds in his " 'ability to service his customers, keep them happy and earn a living for himself' "). Hecht's loss of commissions may have been factually caused by RICO violations, but was not proximately caused by the violations. Because Hecht was "neither the target of the racketeering enterprise nor the competitor[ ] nor the customer[ ] of the racketeer[s]," *see Sperber*, 849 F.2d at 65, the injury to Hecht from customers' deciding to cancel subscriptions or to withdraw business upon discovering the frauds was not reasonably foreseeable as a natural consequence of the RICO violations.[2]

---

**2.** Seeking to distinguish the line of cases that decline to find standing for discharged employees, Hecht claims that loss of commissions involves a deprivation of a "business or property" interest under section 1964(c), but that loss of employment does not. None of the discharged-employee cases, however, turn on insufficiency

of the injury. Rather, they focus on the cause of the injury. Moreover, loss of employment, even in the absence of a contract, may be a deprivation of a property interest. *Cf. Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972) (employment rights are property interest for purposes of due

## 2. Standing for Defendants' Section 1962(d) Violation

Hecht's second ground of appeal is that his discharge was an overt act in furtherance of the alleged RICO conspiracy, and thus that his injury directly resulted from defendants' violation of section 1962(d).

■■■ Section 1964(c) extends civil liability to any violation of section 1962. Therefore, it allows that injury may result from a section 1962(d) conspiracy. Because a conspiracy—an agreement to commit predicate acts—cannot by itself cause any injury, we think that Congress presupposed injury-causing overt acts as the basis of civil standing to recover for RICO conspiracy violations. See Medallion TV Enters. v. SelecTV of California, Inc., 627 F.Supp. 1290, 1297–98 (C.D.Cal.1986), aff'd, 833 F.2d 1360 (9th Cir.1987), cert. denied, — U.S. ——, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989).[3] Therefore, although an overt act by itself (whether or not injury ensues) is not a requisite element of a section 1962(d) criminal conspiracy violation, see United States v. Teitler, 802 F.2d 606, 613 (2d Cir.1986), we hold that injury from an overt act is necessary and sufficient to establish civil standing for a RICO conspiracy violation.

We cannot agree, however, with cases relied on by Hecht that find standing on the basis of any overt act in furtherance of the conspiracy, even if it is not a predicate racketeering act. See Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1169 (3d Cir.1989) ("Nothing in Sedima forecloses the possibility that harm arising from an act predicate to conspiracy, yet distinct from the racketeering acts listed in section 1961(1), might yet confer standing so long as the plaintiff has alleged a violation of section 1962(d)."); Williams v. Hall, 683 F.Supp. 639, 643 (E.D.Ky.1988) (any injury-causing overt act may confer standing).

Congress did not deploy RICO as an instrument against all unlawful acts. It targeted only predicate acts catalogued under section 1961(1). Admittedly, RICO is to be read broadly to effect its purpose. See Sedima, 473 U.S. at 497, 105 S.Ct. at 3285. Its purpose, however, is to target RICO activities, and not other conduct.

■■■ Therefore, we hold that standing may be founded only upon injury from overt acts that are also section 1961 predicate acts, and not upon any and all overt acts furthering a RICO conspiracy. See In re Crazy Eddie Sec. Litig., 714 F.Supp. 1285, 1291–92 (E.D.N.Y.1989) (finding civil standing for RICO conspiracy on the basis of injury "resulting from the defendant's commission in furtherance of the agreement of a predicate act."). Because the overt act of Hecht's discharge was not a section 1961(1) predicate act, his loss of employment does not confer civil standing.

## 3. Sufficiency of Conspiracy Pleading

■■■ Finally, we agree with the district court that Hecht did not plead a RICO conspiracy with sufficient particularity. Paragraph 105 of the complaint alleges that defendants were "conspiring with agents, servants, and employees and others to conduct their affairs through a pattern of racketeering activity; ... [and were] conspiring to violate provisions of [section] 1962(a),[ ](b) and (c)." It does not allege facts implying any agreement involving each of the defendants to commit at least two predicate acts. Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement. See Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989) (must plead agreement to commit predicate acts and knowledge that those acts were part of a pattern of racketeering activity in violation of section 1962(a)–(c)); Morin v. Trupin, 711 F.Supp. 97, 111 (S.D.

---

process). Even were no property rights at play, we could not agree that loss of employment does not injure one's "business".

**3.** At common law, a civil conspiracy claim may be founded on an injury from an unlawful overt act done in furtherance of the conspiracy. See Halberstam v. Welch, 705 F.2d 472, 477 (D.C.Cir. 1983); Rutkin v. Reinfeld, 229 F.2d 248, 252 (2d Cir.), cert. denied, 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956).

N.Y.1989) (must plead agreement and that defendants understood scope of enterprise and knowingly agreed to further its affairs through commission of offenses); *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg,* 660 F.Supp. 1362, 1372 (D.Conn.1987) (must plead knowing agreement to commit predicate acts).[4]

Because it would make no difference in outcome if he had pleaded conspiracy properly, we decline to remand to the district court to give Hecht an opportunity to move to amend his complaint.[5]

 The judgment of the district court is affirmed.[6]

4. Defendants moved to dismiss the complaint for lack of particularity under Rule 9(b), but the district court did not state whether its decision was based on Rule 9(b). On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy. Hecht's pleading of a conspiracy, apart from the underlying acts of fraud, is properly measured under the more liberal pleading requirements of Rule 8(a). *See Rose,* 871 F.2d at 366; *Andreo,* 660 F.Supp. at 1372. Even so, the complaint must allege some factual basis for a finding of a conscious agreement among the defendants.

5. We find it unnecessary to reach the questions, not decided by the district court, whether a corporation is capable of conspiring with its own officers and whether Hecht adequately pleaded the "enterprise" requirement.

6. Although the district court's judgment of April 28, 1989, dismissed the complaint with respect to all the defendants, defendant Stephens has not entered an appearance in this case, nor did he join in the motion to dismiss. *Sua sponte* dismissal of the complaint with respect to Stephens is appropriate here, because the issues concerning Stephens are substantially the same as those concerning the other defendants, and Hecht, the party against whom the judgment of dismissal was entered, had notice and a full opportunity to make out his claim against Stephens. *See Perez v. Ortiz,* 849 F.2d 793, 797 (2d Cir.1988) (discussing general appropriateness of *sua sponte* dismissals); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1357, at 593 (1969).