**PATRICK CARTER ASSOCIATES, INC., Plaintiff,**

v.

**RENT STABILIZATION ASSOCIATION OF N.Y.C., INC., Association Program Insurance Consultants, Inc., John J. Gilbert, III, Sheldon Factor, Robert H. Smith and Morris Oppman, Defendants.**

No. 89 Civ. 7716 (WCC).

United States District Court, S.D. New York.

Dec. 13, 1991.

Kroll & Tract, New York City, for plaintiff; Leigh R. Isaacs, of counsel.

Fisher and Fisher, Brooklyn, N.Y., for defendants Rent Stabilization Ass'n, John J. Gilbert, III, and Sheldon Factor; Kenneth K. Fisher, Vivian Shevitz, Jane Simkin Smith, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Plaintiff Patrick Carter Assocs., Inc. brings this action for damages pursuant to 28 U.S.C. § 1331 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and under the Court's pendent jurisdiction for common law fraud, breach of contract, interference with contractual relations and quantum meruit against Rent Stabilization Association of N.Y.C., Inc. ("RSA"), its President John J. Gilbert, III, and its Director of Finance, Sheldon Factor, Association Program Insurance Consultants, Inc. ("APIC"), and its officers, Robert H. Smith and Morris Oppman. By order dated November 28, 1990, this Court dismissed the Complaint in this action, but allowed repleading. On January 11, 1992, plaintiff served an Amended Complaint. Defendants RSA, Gilbert, and Factor bring this motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., to dismiss the Amended Complaint contending that it is clear on the record that the RICO predicates (acts of mail fraud) and the other elements of RICO cannot be established.[1]

## BACKGROUND

Defendant RSA is an incorporated real estate industry association whose members and associate members include the great majority of landlords of rent-stabilized apartments in New York City. Defendant APIC is a Florida corporation which was hired as an insurance consultant by RSA during the relevant time period. Plaintiff alleges that in December, 1987, Oppman, an officer of APIC, sought plaintiff's assistance in developing and implementing a group health insurance plan for RSA members and associate members. Am. Complaint at ¶ 12. At a meeting held in May 1988, APIC representatives Oppman and Smith suggested that plaintiff develop a group health plan for RSA's members and associate members which was acceptable to RSA and APIC and at no cost to RSA or APIC. Am. Complaint at ¶ 15. Plaintiff and APIC further agreed to divide equally the administrative fees to be charged to program subscribers. At a July 1988 meeting, defendants Factor and Gilbert, respectively, RSA's Director of Finance and President, allegedly confirmed this agreement with plaintiff's president. Am. Complaint at ¶ 18. They are also alleged to have agreed that RSA would pay the initial development and start-up costs of the plan and reimburse plaintiff and APIC for all advances in relation thereto. Am. Complaint at ¶ 18.

Plaintiff thereafter developed and implemented a group health insurance program which resulted in Empire Blue Cross/Blue Shield ("Blue Cross") issuing a group health insurance policy in RSA's name (the "Plan"), effective September 1, 1989. Am. Complaint at ¶¶ 19, 22. Under the Plan, eighty percent of the premium collected from program subscribers was to be remitted to Blue Cross and the remaining twenty percent was to be retained by RSA, subject to payment to Blue Cross if the premium amounts remitted to Blue Cross were insufficient to meet claims and Blue Cross expenses. Am. Complaint at ¶ 19.

---

1. The motion also sought a stay of discovery pending resolution of the motion for dismissal of the Amended Complaint. This portion of defendant's motion was denied by the Court on May 2, 1991 at a conference held in connection with the filing of the instant summary judgment motion.

Plaintiff was designated administrator in accordance with the parties' agreement. Plaintiff's duties included collecting premiums as well as a $20.00 per month administrative fee from each subscriber. The $20.00 fee was to be divided equally between plaintiff and APIC after payment of administrative expenses pursuant to plaintiff's agreement with the defendants. Am. Complaint at ¶¶ 20–21.

Plaintiff acted as Plan administrator for two months. In the course of an October 27, 1989 meeting, Factor and Gilbert requested plaintiff to remit to RSA the monies from the premium account and loss reserve account which plaintiff had collected as administrator. Plaintiff refused to comply with their request. Am. Complaint at ¶¶ 24–25.

By letter dated November 1, 1989, Gilbert directed plaintiff to transmit to RSA all funds in plaintiff's custody regarding the RSA Group Health Insurance Plan which plaintiff had collected as administrator, along with a statement listing the amounts paid by each subscriber. Am. Complaint at ¶ 26. In a letter dated November 1, 1989, plaintiff reiterated its refusal to transmit the funds and transmitted instead to Blue Cross what it estimated to be the premiums it presently held. Am. Complaint at ¶ 27. In a letter dated November 2, 1989, RSA terminated plaintiff's position as administrator, effective immediately. Am. Complaint at ¶ 28. In a letter dated November 6, 1989, APIC also terminated plaintiff's position on the basis of plaintiff's transfer of funds to Blue Cross without RSA's approval. Am. Complaint at ¶ 29. RSA thereafter informed Blue Cross that plaintiff no longer administered the program and on or about November 10, 1989, RSA sent bills to Plan subscribers directing them to send their premium payments directly to RSA. Am. Complaint at ¶¶ 30–31. Plaintiff claims not to have received any portion of the administrative fees collected while it acted as administrator of the plan or subsequent to its dismissal (Carter Affidavit ¶ 24). Further, plaintiff claims that it has not been reimbursed for any portion of the $48,000 in developmental and start-up costs it advanced (*Id.*).

Plaintiff charges that in and around early 1988, defendants entered into a conspiracy whereby they would retain plaintiff, at no cost, to develop a health insurance plan for RSA's members and associate members and thereafter divide the administrative fee charged each subscriber among themselves. Plaintiff alleges that defendants' representations regarding the division of administrative fees, the reimbursement of expenses, and plaintiff's role as administrator of the Plan were false and known to be false when made. Plaintiff alleges that in the course of and in furtherance of defendants' scheme to defraud the plaintiff, defendants engaged in acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, which taken together constitute racketeering activity in violation of 18 U.S.C. § 1962.

Defendant argues that, based on undisputed facts and on a lack of factual support for allegations added to the Amended Complaint, plaintiff's Complaint shows neither mail fraud nor RICO violations.

## DISCUSSION

*The Standard for Summary Judgement*

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact." Fed. R.Civ.P. 56(c); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must establish that there is a "genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356. "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight*, 804 F.2d at 11. The inquiry under a motion

for summary judgment is thus the same as that under a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### Mail Fraud

Plaintiff alleges that defendants Gilbert and Factor, on behalf of defendant RSA, made three statements which it characterizes as "misrepresentations." Gilbert and Factor supposedly each "confirmed" oral agreements that had been entered into between plaintiff and defendant APIC, to the effect that, in exchange for plaintiff's development and implementation of a health insurance plan for RSA's members, (1) "plaintiff would be the administrator of any group health insurance plan effectuated on behalf of RSA's members and associate members through plaintiff's efforts" (Am. Complaint ¶ 18); (2) "administrative fees to be charged the plan's subscribers would be equally divided between plaintiff and APIC" (Am. Complaint ¶ 39); and (2) "RSA would pay the initial development and start-up costs of the plan and would reimburse Carter and APIC for all advances thereto" (Am. Complaint ¶ 40). Plaintiff alleges that these promises were false when made because defendants intended not to fulfill them and that, in reliance on these false representations, plaintiff developed a plan and expended $48,000 in start-up costs (Am. Complaint ¶¶ 41, 43).

Defendants first argue that plaintiff did not suffer a deprivation of any of its property so as to bring this case within the ambit of the federal mail and wire fraud statutes or within RICO. Next, RSA argues that summary judgment is appropriate on the basis that it and its officers lacked motive or intent to defraud plaintiff of "its legitimate start-up expenses." Finally, RSA argues that the mailings identified in the Complaint are completely unrelated to the money or property identified in the Complaint in which plaintiff has a property interest.

### A. Deprivation of Property

■ In order to sustain its RICO claim predicated on mail and wire fraud,[2] plaintiff must show not only that defendants intentionally made misrepresentations to plaintiff, but that they did so in order to deprive plaintiff of plaintiff's money or property, and used the mails to further this property deprivation. *McNally v. United States*, 483 U.S. 350, 360, 107 S.Ct. 2875, 2881–82, 97 L.Ed.2d 292 (1987). Thus, as the Second Circuit recognized in *Corcoran v. American Plan Corp.*, 886 F.2d 16, 21 (2d Cir.1989), a plaintiff fails to state a claim under the mail fraud statute if he has not alleged "any property right or interest in the monies that defendants allegedly [obtained]."[3]

■ Aside from alleging that defendants deprived it of reimbursable start-up expenses of $48,000,[4] plaintiff argues that

2. The mail fraud statute provides in pertinent part:

> Whoever, having *devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,* ... for the purpose of executing such scheme or artifice or attempting to do so [uses the mails or causes them to be used,] shall be fined not more than $1,000 or imprisoned not more than five years, or both. 18 U.S.C. § 1341.

In *McNally v. United States,* 483 U.S. 350, 358–59, 107 S.Ct. 2875, 2880–81, 97 L.Ed.2d 292 (1987), the Supreme Court examined the language of the statute proscribing the conducting of "any scheme or artifice to defraud, or for obtaining money or property by means of false

or fraudulent pretenses ..." and concluded that despite the disjunctive, the phrases are not independent of one another and each requires a showing of an intention to wrong one in his property rights.

3. Because the mail and wire fraud statutes use the same relevant language, both are analyzed the same way. *See United States v. Covino,* 837 F.2d 65, 71 (2d Cir.1988).

4. RSA asserts that the money spent by plaintiff to start up the insurance program represents the only type of property "purportedly" lost by plaintiff protected by the mail fraud statute. RSA Brief at 6. This Court concurs with RSA that such start-up and developmental costs constitute property protected by the mail fraud statute.

it was deprived of its share of the $20 per month administrative fees to be paid during the life of the health insurance plan by Plan subscribers. Plaintiff claims that this loss amounts to $3,000,000 (Am. Complaint at ¶ 44). The bulk of the claimed $3,000,000 in lost administrative fees has not yet been paid by Plan subscribers. Rather, it represents plaintiff's forecast as to how much money it would have earned had it continued to split fees with APIC for the life of the Plan.

The Court cannot say on this summary judgment motion that plaintiff has no property right or interest in administrative fees collected after its termination as Plan administrator. We are without a sufficient factual basis to find on this motion that plaintiff had no entitlement to the monies collected subsequent to its termination. The parties strongly contest the terms and scope of the agreement entered into between plaintiff and defendants. The parties also dispute the appropriateness of plaintiff's termination. Consequently, the Court believes that plaintiff should have an opportunity at trial to prove its assertion that it has a property interest in administrative fees allegedly due it and wrongfully diverted by defendants.

■ Plaintiff also alleges that it has not received any portion of the administrative fees collected *prior* to its termination. *See* Am. Complaint ¶ 44, Memorandum in Opposition to Motion for Summary Judgment ("Plaintiff's Memo") at 21. Administrative fees that were owed plaintiff as of the date of its termination are not speculative or remote and would constitute property of the plaintiff if, in fact, it had not already received those monies. Defendant, however, directs the Court's attention (Def. Reply Br. at 21–22) to plaintiff's letter of November 1, 1989, in which plaintiff purportedly admits that it retained funds received by Plan subscribers which constitute administrative fees.[5] While that letter

would appear to indicate that plaintiff has retained at least some of the administrative fees due it prior to termination, interpretation of the language of that letter is not appropriate on this motion for summary judgment. Consequently, there is a factual dispute as to whether plaintiff received all or part of its administrative fees collected prior to its termination.

### B. Intent

■ Defendants assert that some $48,000 in reimbursement claims were submitted by plaintiff to RSA some time in the Fall of 1989, that a dispute arose as to the legitimacy of all of the claims, that, within weeks of the submittal of the claims, a written request for back-up and clarification was made by RSA, and that, less than a month later, before the dispute was settled, plaintiff, rather than sending the requested clarification, filed its first complaint seeking RICO damages. RSA Brief at 18. Defendants contend that the fact that Mr. Gilbert requested clarification of the expenses cannot negate the evidence which clearly indicates that RSA had every intention to reimburse plaintiff's actual and reasonable start-up expenses.

RSA contends, moreover, that since RSA itself was to be reimbursed for expenses fronted to plaintiff through the insurance Plan's Payment of Charges fund ("POC"), it lacked a motive to defraud plaintiff of start-up costs. Plaintiff maintains, however, that while RSA's possible reimbursement from the POC was discussed, there was no agreement. Further, argues plaintiff, such discussions contemplated that such reimbursement would have taken place only if the Plan was successful, and even then commencing only in the thirty-seventh month of the program's existence and continuing over the next four years.

As noted above, defendants bear the burden of proving the absence of any genuine

---

5. In that letter, by Mr. Carter to Mr. Gilbert of RSA, plaintiff stated:

 1. I have, this day, transmitted to Empire Blue Cross the amount of the funds received by me which constitutes health insurance premiums.

 2. The balance of the funds are being held by my firm as administration fees in accordance with the individual, signed enrollment applications each of which sets forth the administration fee agreement.
Plaintiff's Exh. O.

issue of material fact. Plaintiff's fraud allegations rest largely on statements made by defendants which were allegedly fraudulent when made and induced injurious reliance by plaintiff. Defendants dispute those allegations. Drawing all reasonable inferences in favor of the non-moving party, this Court cannot conclude that no reasonable trier of fact could find in favor of plaintiff.[6] A material, factual issue exists as to the nature of defendants' intentions at the time of making the statements. Resolution of the issue of intent on a motion for summary judgment is inappropriate here, as it involves assessing the credibility of the conflicting statements of the parties to the alleged fraud. *See ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse*, 609 F.Supp. 434, 449 (S.D.N.Y.1984) ("[S]ummary judgment should be cautiously invoked in fraudulent inducement cases, which raise issues that often turn on credibility or inference, such as intent and reliance.").

### 1. The Individual Defendants

As to the individual RSA defendants, they argue that the Amended Complaint alleges no facts from which the Court could conclude that Gilbert or Factor had any financial motive not to reimburse plaintiff for legitimate expenses. The Court, however, finds that it is clear from the submissions of the parties that a factual dispute exists as to the involvement and liability of these defendants.

The Amended Complaint alleges, *inter alia*, that Gilbert and Factor were paid a percentage of monies received by APIC in connection with work done for RSA and that they stood to gain increased remuneration, stature, and job security by aiding RSA in its alleged scheme to develop a health plan at no cost or at reduced cost through avoidance of its obligation to reimburse plaintiff its advances. Moreover,

Carter swears in his affidavit that APIC's President, Smith, stated that Factor and Gilbert received a percentage of all monies earned by APIC on business forwarded it by RSA. Carter Aff. ¶ 28. Plaintiff alleges that by defrauding plaintiff, which resulted in APIC's collecting all of the administrative fees and not reimbursing plaintiff's expenses, Factor and Gilbert increased the amount of money they each received and continue to receive from APIC. Finally, plaintiff contends that RSA has refused to produce documents which might confirm Smith's statement as well as documents evidencing the yearly remuneration of Messrs. Gilbert and Factor. Defendants, on the other hand, contend that such allegations are conclusory and wholly without factual basis. Gilbert and Factor, in their sworn declarations, deny that they ever received or were promised part of any administrative fees.

While the facts alleged by plaintiff, if true, do not represent an overwhelming case of involvement in a scheme to engage in racketeering through the commission of acts of mail fraud, plaintiff's allegations do raise genuine issues of material fact with regard to the individual defendants' intentions to perform on their promises when such promises were made. As the Second Circuit has noted previously, "[a] common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so." *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds, United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989). This the plaintiff has done in a manner sufficient to withstand a motion for summary judgment.

### C. The Mailings

 The Amended Complaint identifies two types of correspondence purported

---

**6.** "Although failure to perform under a contract generally does not give rise to a claim for fraud, New York courts have long recognized that an action for fraud will lie if the promisor did not intend to perform at the time he entered into the contract." *Maritime Ventures Int'l Inc. v. Caribbean Trading & Fidelity, Ltd.*, 689 F.Supp. 1340, 1354 (S.D.N.Y.1988) (citations omitted); *accord Fort Howard Paper Co. v. William D. Witter Inc.*, 787 F.2d 784, 794 (2d Cir.1986) (" 'New York law is clear that an action for fraud will lie when a defendant makes a promise that he has no present intention of performing' ") (citation omitted).

to have been mailed in furtherance of a scheme to deprive plaintiff of its property: the first type consists of letters, mailed or transmitted by facsimile, between defendants and plaintiff regarding the termination of plaintiff as Plan administrator (Am. Complaint ¶¶ 26–29); the second consists of letters mailed to Plan subscribers directing that premium payments and fees be sent to RSA, as well as the resulting mailings by the Plan subscribers to RSA (Am. Complaint ¶ 31). An essential element of each of the statutory violations of the mail fraud statute underlying plaintiff's RICO action is that the plaintiff be deprived of money or property by the fraudulent acts of defendants. *See Philan Ins. Ltd. v. Frank B. Hall*, 748 F.Supp. 190, 195 (S.D.N.Y.1990).

With respect to the mailings relating to plaintiff's termination, the Court concludes that there is a material issue of fact as to whether the mailings are related to defendants' alleged conspiracy to divide the administrative fees amongst themselves and to develop a health plan at no cost or reduced cost through avoidance of the obligation to reimburse plaintiff's expenses. Certainly, letters terminating the services of plaintiff could be in furtherance of the alleged conspiracy to divide administrative fees exclusively among the defendants— plaintiff's termination resulted in the monies from Plan subscribers being sent to defendants rather than to plaintiff. Moreover, plaintiff has alleged that the termination letters were written in an effort to sever any obligation on the part of RSA to reimburse plaintiff's expenses. Although the termination would not actually relieve defendants of that obligation, the Court cannot conclude on this motion that the defendants, in sending such letters to plaintiff, did not intend to discourage plaintiff from pursuing a claim for reimbursement. Plaintiff clearly has a property interest in the reimbursement of such expenses, and, assuming there was a conspiracy to deprive plaintiff of such reimbursement, among other benefits of the bargain, the letters would obviously have been written in furtherance of that conspiracy.

As to the second set of mailings, plaintiff asserts that "each monthly bill sent or which will be sent to the thousands of subscribers, including those bills sent on November 20, 1989 directing the subscribers to send their payments to RSA and not plaintiff, constitutes a separate act of mail fraud" (Plaintiff's Memo at 44–45) and that "each subscriber's remittance of their payments to RSA by mail, as envisioned by RSA's November 20, 1989 bill, also constitutes and will continue to constitute an act of mail fraud" (*Id.* at 45). Again, these mailings, in that they direct subscribers to send their fees directly to defendants rather than to plaintiff, could reasonably be found to be in furtherance of a scheme to divide the administrative fees among the defendants. In addition, plaintiff argues that these mailings are in furtherance of the alleged scheme to defraud plaintiff, since "[c]ollection of the administrative fees by RSA, as opposed to plaintiff, will also prevent plaintiff from recovering the monies it advanced." *Id.* at 48. There may be some merit to this contention. It is self-evident that if the subscriber payments do not pass through plaintiff's hands, plaintiff would have no opportunity to resort to self-help to enforce defendants' obligation to reimburse its start-up expenses. Consequently, the Court cannot find that the mailings to the Plan subscribers subsequent to plaintiff's termination are unrelated to the alleged scheme to deny plaintiff reimbursement of its start-up expenses.

Accordingly, summary judgment is denied with respect to the allegations that defendants have committed predicate acts of mail fraud both by the mailings relating to plaintiff's termination as Plan administrator, and by the mailings instructing subscribers to send their payments directly to RSA.

*RICO*

■ Although the Amended Complaint fails to state which section of § 1962 was violated,[7] the relevant sections would appear to be Sections 1962(c) and (d). To state a claim under § 1962(c), a plaintiff

---

**7.** Defendants argue that summary judgment should be granted since the Amended Complaint

fails to specify which subsection of § 1962 was violated. Although plaintiff should have speci-

must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).[8] To state a claim under § 1962(d), a plaintiff must allege a conspiracy to violate one of the sections of 1962, in this case, § 1962(c).

The Court finds that plaintiff has stated a cause of action under RICO, Sections 1962(c) and (d), in a manner sufficient to withstand this motion for summary judgment. Section 1962(c) prohibits the use of a pattern of racketeering activity in the conduct of a RICO enterprise's affairs. As noted above, plaintiff has pleaded adequately the RICO predicate acts of mail fraud and that those acts relate to the purpose and activities of the RICO enterprise. However, plaintiff has only alleged that RSA, not the individual defendants, Gilbert and Factor, engaged in at least two predicate acts of mail fraud, as required to state a claim under subsection (c). *See* Am. Complaint at ¶¶ 26–31. Gilbert is only alleged to have made the mailing on November 1, 1989 (¶ 26) and Factor is only alleged to have made the mailing on November 2, 1989 (¶ 28). Thus, the Court concludes that plaintiff has adequately pled a violation of Section 1962(c) as to RSA, but not as to Gilbert and Factor.

To state a claim for a RICO conspiracy under Section 1962(d), plaintiff must allege facts implying an agreement involving each of the defendants to commit at least two predicate acts. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990). In this case, plaintiff has alleged that "[e]ach defendant understood the nature of the conspiracy and knowingly agreed to further its affairs through the commission of the aforesaid acts." Am. Complaint at ¶ 34. While this allegation could be said to be nothing more than boilerplate, the Court believes that when considered in conjunction with the other allegations of the Complaint, it is sufficient to charge a RICO conspiracy as to defendants RSA, Gilbert, and Factor.[9]

### A. Enterprise

As to the requirement of a RICO "enterprise," plaintiff has sufficiently pled its existence. "Evidence of an ongoing organization, the associates of which function as a continuing unit, suffices to prove an enterprise." *Procter & Gamble v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 15 (2d Cir.), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990) (citation omitted). Here plaintiff has sufficiently alleged an enterprise—a group of persons and organizations in an ongoing association, the goal of which was to cause plaintiff to develop an insurance program at no cost to RSA or APIC, and thereafter divide the administrative fees among themselves.

### B. Pattern

To satisfy the "pattern" requirement of RICO, the plaintiff must show that defen-

---

fied such subsection, failure to have done so does not mandate the granting of summary judgment in defendants' favor. *See Zola v. Gordon*, 685 F.Supp. 354, 372 (S.D.N.Y.1988) (although plaintiffs failed to specify which sections of § 1962 were violated, court concluded that plaintiffs had alleged violations of § 1962(c) and § 1962(d)); *Greenfield v. Professional Care, Inc.*, 677 F.Supp. 110, 115 (E.D.N.Y.1987) (although complaint failed to state which section of § 1962 was violated, court concluded that the relevant section was § 1962(c)).

**8.** Plaintiff's statements that "RSA's contention that various elements of a RICO violation have not been properly pled was already dismissed in this Court's prior opinion" and that "the Court ... upheld the validity of the RICO claim" mischaracterize this Court's prior opinion. Plaintiff's Brief at 5, 14. In the Opinion and Order dated November 28, 1990 this Court recognized that although "the complaint alleges a cognizable claim for mail fraud" it failed to meet the requirement of specificity demanded by Rule 9(b) concerning the commission of the predicate acts. Hence, defendants' motion to dismiss pursuant to Rule 9(b) was granted without prejudice and plaintiffs were granted an opportunity to replead. Because the complaint failed to plead fraud with sufficient particularity, it thereby failed to establish the predicate acts necessary to support a RICO claim. The Court did not reach the question whether the elements of RICO had been pled. It reaches this question for the first time here.

**9.** Allegations of a RICO conspiracy, apart from the underlying acts of fraud, are measured under the more liberal pleading requirements of Fed.R.Civ.P. Rule 8(a). *Hecht*, 897 F.2d at 26 n. 4.

dant has committed "at least two acts of racketeering activity." *See* 18 U.S.C. § 1961(5). The Supreme Court has stated that a plaintiff alleging a pattern of racketeering activity must demonstrate (1) that there is a "relationship" between the predicate acts and (2) "that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). " 'It is this factor of *continuity plus relationship* which combines to produce a pattern.' " *Id.* 109 S.Ct. at 2900 (citation omitted). *See also Beauford v. Helmsley*, 865 F.2d 1386, 1391 (2d Cir.) (en banc), *vacated*, 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, *adhered to*, 893 F.2d 1433, *cert. denied*, 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989) ("Congress's goal in fashioning its definition of 'pattern of racketeering activity' was to exclude from the reach of RICO criminal acts that were merely 'isolated' or 'sporadic'....")

The Court believes that the plaintiff here has alleged the requisite "relationship" between the predicate acts. This requirement is satisfied if the acts " 'have the same or similar purposes, results, participants, victims, or methods of commission.' " *Id.* 109 S.Ct. at 2901 (citation omitted); *United States v. Simmons*, 923 F.2d 934, 951 (2d Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 2018, 114 L.Ed.2d 104, *and cert. denied*, — U.S. ——, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991). This much has been pled in this action.

The Supreme Court, recognizing that the "continuity" concept is somewhat difficult to define, concluded that "[w]hether the predicates proved establish a threat of continued racketeering activity depends upon the specific facts of each case." *H.J.*, 109 S.Ct. at 2902. For guidance, the Supreme Court explained:

> 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the failure with a threat of repetition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

*Id.*

The Amended Complaint in the instant action satisfies the demands of *H.J.* with respect to alleging a pattern of racketeering activity on the part of RSA in a manner sufficient to defeat the motion for summary judgment. The Supreme Court has stated that the requirement of "continuity" may be met where a party can prove a series of related predicates extending over a substantial period of time. Plaintiff has alleged acts of mail fraud occurring from November of 1989 until the present, and continuing into the future for an indefinite period as bills are sent to, and payments are received from, subscribers. Such allegations, if proven, involve sufficient continuity or threat of continuity to constitute a pattern under RICO. *See Beauford*, 865 F.2d at 1392 (continuity satisfied where "complaint alleged that on each of several occasions defendants had mailed fraudulent documents to thousands of persons and that there was reason to believe that similarly fraudulent mailings would be made over an additional period of years"); *see also Reinfeld v. Riklis*, 722 F.Supp. 1077, 1083 (S.D.N.Y.1989) (continuity established where predicate acts extended over seven months and "presumably payments on the four-year note will continue to be collected in the future").[10]

## C. Unconstitutionality of RICO

■ Defendants argue that the civil RICO statute is unconstitutionally vague

---

**10.** Defendants also contend that the plaintiff has no standing to bring this action because plaintiff's alleged damages are too speculative to constitute "injury to business or property" within

the meaning of the RICO statute. In support of this contention, defendants cite *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir.1990). That case, however, is inapposite.

as applied in this case. They argue that they were afforded no notice that the conduct in which they allegedly engaged was proscribed by the RICO statute and could result in their being labeled "racketeers." However, defendants have cited no cases which have found RICO unconstitutional either on its face or as applied, *see, e.g., United States v. Coiro,* 922 F.2d 1008 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991) (declining to hold RICO statute unconstitutionally vague); *Kauffmann v. Yoskowitz,* 1990 WL 300795, at *2 (S.D.N.Y.1990) (declining to hold RICO statute unconstitutional as applied), and this Court declines to so hold in the instant case.

■ The standard used in examining a statute for unconstitutional vagueness is whether a person of ordinary intelligence could not reasonably understand that the contemplated conduct would be proscribed by the statute. *United States v. Paccione,* 738 F.Supp. 691, 698 (S.D.N.Y.1990) (citations omitted). A RICO offense is predicated upon certain specified criminal offenses. In this case, defendants are alleged to have conspired to defraud plaintiff through the use of the United States mails in violation of 18 U.S.C. § 1341. Defendants do not argue that the underlying mail fraud statute is unconstitutionally vague; consequently, the Court concludes that defendants were afforded notice that their alleged conduct could result in liability under RICO. *See Paccione,* 738 F.Supp. at 698–99 (rejecting challenge to RICO indictment where defendants made no claim that the predicate offenses of mail and wire fraud were themselves unconstitutionally vague); *cf. Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 58, 109 S.Ct. 916, 924–25, 103 L.Ed.2d 34 (1989) (in reviewing state RICO law modeled after federal RICO law, the

Supreme Court held that "if the [predicate offenses are] not unconstitutionally vague, the [RICO statute] cannot be vague either."). Defendants cannot be found to have violated RICO unless they are first found to have committed at least two acts of mail fraud.

*Pendent State Law Claims*

Had plaintiff's RICO action been dismissed, defendants sought the dismissal of plaintiff's pendent state law claims as well. However, in view of the Court's decision not to dismiss the RICO claims in this action, defendants' motion to dismiss the pendent claims is denied. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## CONCLUSION

For the foregoing reasons, summary judgment is denied.

SO ORDERED.

---

In *Hecht,* plaintiff sued his employer for damages under RICO based on loss of employment and future business commissions resulting from his failure to aid or abet the alleged RICO violations of his employer. The Second Circuit held that neither claim constitutes an injury that would confer standing to sue under RICO since plaintiff could not show injury 'by the conduct constituting the violation.' *Id.* at 23. In addition, the Court of Appeals noted that the loss of commissions was too speculative to confer standing "because Hecht only alleges that he would have lost commissions in the future, not that he has lost any yet." *Id.* at 24. In the instant case, plaintiff's allegations with respect to the lost $48,000 in start-up expenses and with respect to its already-lost administrative fees are sufficient to confer RICO standing.