ASTECH–MARMON, INC., Plaintiff,

v.

Alfred LENOCI, Jr.; Alfred Lenoci, Sr.; Michael Schinella; United Properties, Ltd.; United Environmental Redevelopment, Inc.; and Crescent Avenue Development Company, LLC, Defendants.

No. CIV. 3:03CV816(AHN).

United States District Court,
D. Connecticut.

Dec. 6, 2004.

David S. Golub, Jonathan M. Levine, Mario Dinatale, Silver, Golub & Teitell, Stamford, CT, for Plaintiff.

John R. Gulash, Jr., Gulash & Riccio, Bridgeport, CT, Ira B. Grudberg, David L. Belt, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, for Defendant.

## *RULING ON DEFENDANTS' MOTION TO DISMISS*

NEVAS, District Judge.

Plaintiff Astech–Marmon, Inc. ("Astech–Marmon"), an asbestos-abatement contractor based in Bridgeport, Connecticut, has brought suit against defendants Alfred Lenoci, Jr. ("Lenoci, Jr."), Alfred Lenoci, Sr. ("Lenoci, Sr."), and Michael Schinella ("Schinella") (collectively, the "Individual Defendants") and the companies they owned and controlled: defendants United Properties, Ltd. ("UP"), United Environmental Redevelopment, Inc. ("UER"), and Crescent Avenue Development, LLC ("Crescent") (collectively, the "Corporate Defendants").[1] Astech–Marmon alleges

---

1. The Individual and Corporate Defendants shall be collectively referred to as the "Defen-

that Defendants' actions violated the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a *et seq.* Astech–Marmon further alleges that the Defendants caused tortious interference to its reasonable business expectancies.

The Defendants have moved to dismiss the civil RICO claims. For the reasons discussed below, the Defendants' motion to dismiss is DENIED [Doc. # 23].

## BACKGROUND

### I. *Parties*

The Individual Defendants in this action—Lenoci, Jr., Lenoci, Sr., and Schinella—were convicted as part of a federal municipal corruption prosecution involving, among other people, former City of Bridgeport ("City") Mayor Joseph Ganim ("Ganim"), Paul J. Pinto ("Pinto"), and Patrick O. Coyne ("Coyne"). Ganim, Pinto, and Coyne are not parties in this case. The Individual Defendants operated the Corporate Defendants (UP, UER, and Crescent), and have pleaded guilty for their role in bribing public officials to obtain City contracts for asbestos abatement. Three Connecticut companies that are not parties to this action—Chem Scope, Inc. ("Chem Scope"), AAIS Corp. ("AAIS"), and AAIS–Petco LLC ("AAIS–Petco")—were associated with the Defendants and performed the municipal asbestos work at issue here.

### II. *Facts Alleged in the Complaint*

For this motion to dismiss, the court accepts as true the following facts as alleged in the complaint:

Beginning in 1996 and continuing through 2000, the Individual Defendants entered into an illegal association ("Association") with several City officials, including former Mayor Ganim, Pinto, and Coyne, who directed the City "Clean and Green" program. This program sought to beautify blighted properties in Bridgeport and required contractors to remove asbestos from old buildings. As alleged, the Defendants conspired with Association members to obtain these lucrative contracts, paid bribes and kickbacks to City officials, and channeled the asbestos-abatement work to Chem Scope, AAIS–Petco, and AAIS, which paid Defendants kickbacks and charged the City inflated bills.[2] As a result of this pattern of racketeering activity, the Defendants effectively controlled the award of City asbestos contracts.

Between 1996 and the present, Astech–Marmon has been the sole state-licensed provider of asbestos-abatement services in Bridgeport. As such, it regularly performed City asbestos work and was entitled to preferential treatment when bidding on City projects. At all relevant time periods referenced in the complaint, Astech–Marmon was ready, willing, and able to perform the asbestos work associated with the "Clean and Green" program.

Despite Astech–Marmon's strong interest in doing this work, Coyne and City officials advised it and other prospective contractors that these projects were unavailable and would not be subject to standard City bidding procedures. As a result, the Defendants and Association members effectively eliminated the City bidding process, denied Astech–Marmon substantial asbestos work, and thereby caused it financial harm. If Astech–Marmon had been permitted to participate in

dants."

**2.** Defendant UER also performed related demolition work on many City properties.

the bidding process, its bids would have been substantially lower than the amounts charged by Chem Scope, AAIS, and AAIS–Petco.

After an extensive federal investigation, the Individual Defendants pleaded guilty and were sentenced in federal court. Lenoci, Jr., pleaded guilty to bribery, three counts of mail fraud, and filing a false tax return; Lenoci, Sr., pleaded guilty to bribery and mail fraud; and Schinella pleaded guilty to conspiracy to commit bribery. Pinto pleaded guilty to conspiracy to violate RICO, mail fraud, and filing a false tax return. Coyne pleaded guilty to mail fraud. After a jury trial, Ganim was found guilty of racketeering, conspiracy to violate RICO, extortion and aiding and abetting, mail fraud and aiding and abetting, bribery and aiding and abetting, conspiracy to commit bribery, and filing a false tax return.

## STANDARD

Fed.R.Civ.P. 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. In considering a motion to dismiss, the court may not consider matters outside the pleadings, but may consider documents attached to pleadings, referenced in the pleadings, or integral to the pleadings. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir.2002). The court must take all factual allegations in the complaint and its exhibits as true, and construe all reasonable inferences in the plaintiff's favor. *See Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir.1999). The court must assess only the legal feasibility of the complaint and whether the plaintiff has pleaded claims on which it is entitled to discovery. It may not consider whether the plaintiff is likely to prevail at trial on its claims. *See Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000). Accordingly, dismissal is appropri-

ate only if it appears that the plaintiff would not be able to prove any facts in support of its claim which would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

Astech–Marmon's complaint sets forth two civil RICO claims. First, it alleges that the Defendants formed an illegal enterprise with Association members and engaged in a pattern of racketeering activity in violation of 18 U.S.C.1962(c). Second, Astech–Marmon alleges that the Defendants conspired with Association members to further these racketeering objectives in violation of 18 U.S.C. § 1962(d).

The Defendants move to dismiss these claims on two grounds. First, they contend that Astech–Marmon lacks standing to sue because the complaint does not sufficiently allege that the Defendants proximately caused its injuries. Second, the Defendants assert that the complaint fails as a matter of law because Astech–Marmon has not pleaded a concrete, non-speculative injury. Based on its review of the complaint and governing case authority, however, the court finds that the Defendants' contentions are without merit.

### I. *Proximate Cause Under RICO*

#### A. *Legal Standard*

■ RICO permits a party to pursue a civil damages remedy if he has been "injured in his business or property *by reason of* a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c) (emphasis added). To bring suit under section 1964(c), a plaintiff must plead (1) a violation of section 1962, (2) an injury to its business or property, and (3) that the defendant's violation caused the plaintiff's injury. *See Commercial Cleaning Serv. LLC, v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir.2001).

The Supreme Court has construed the "by reason of" clause in this section as limiting standing to only those plaintiffs who allege that the asserted RICO violation was the proximate, as well as factual, cause of their injury. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *see also Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir.1990) ("By itself, factual causation . . . is not sufficient.").

■■■ In further defining the contours of proximate cause, the Court has required a *"direct relation* between the injury asserted and the injurious conduct alleged," and precluded recovery by a "plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts." *See Holmes*, 503 U.S. at 268, 112 S.Ct. 1311 (emphasis added). Proximate cause is not established when intervening, independent factors directly cause the alleged injury. *See First Nat. Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir.1994). Courts should refrain from applying a "mechanical test detached from the policy considerations associated with the proximate cause analysis at play in the case." *Commercial Cleaning*, 271 F.3d at 381.

### B. *Analysis*

■■■ The Defendants contend that Astech–Marmon lacks standing to sue because their actions were not the proximate cause of its injuries. More specifically, the Defendants assert that Coyne's false statement to Astech–Marmon that City asbestos work was unavailable and not subject to standard bidding constituted an intervening, non-predicate act that broke the causal link between the Defendants' illegal acts and Astech–Marmon's alleged damages. They maintain that "[a]ll that is certain, based on the Complaint, is that what kept [Astech–Marmon] . . . away

from Bridgeport asbestos projects was [Coyne's] misinformation." (Defendants' Reply Brief at 2.)

The court, however, disagrees and finds the complaint sufficiently alleges that the Defendants' illegal acts, not Coyne's statement, bore a direct relationship to Astech–Marmon's alleged injury. These acts include, among other things, paying bribes and kickbacks to City officials to obtain municipal contracts; directing lucrative contracts to companies such as Chem Scope, AAIS, and AAIS–Petco, which in turn paid kickbacks to the Defendants; and submitting fraudulent invoices that were paid by City officials. These allegations, when viewed as part of the complaint, charge Defendants with subverting the municipal bidding process and denying Astech–Marmon, the sole Bridgeport-based asbestos contractor with bid preferences, the opportunity to bid on and perform City work. These acts of wrongdoing directly caused Astech–Marmon's alleged injury, and Coyne's statement was only one aspect of this pattern of racketeering activity.

The Second Circuit's analysis in two factually similar cases further supports the court's conclusion. In *Commercial Cleaning*, the Second Circuit reversed a district court's dismissal of a complaint on the ground that the plaintiff there failed to allege that the defendant's racketeering activity directly related to its injury. 271 F.3d at 383. The *Commercial Cleaning* plaintiff, a cleaning-services company, brought civil RICO claims against the winning bidder and alleged that the defendant's low bid was made possible only because it hired illegal immigrants and paid them lower wages. *Id.* at 378–79. In response, the defendant claimed that its reduced labor costs, not its alleged hiring of illegal, low-wage immigrants, was the proximate cause of plaintiff's injuries. *Id.*

at 380 (contending that "the chain of causation between its alleged hiring of undocumented workers and ... [the] award [of] cleaning contracts ... [was] too long and tenuous to meet the proximate cause test"). The Second Circuit, however, disagreed and found that what enabled the defendant to reduce its labor costs was its illegal hiring scheme, which was the proximate cause of the plaintiff's injury. *Id.*

Similarly, in *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1343 (2d Cir.1994), a contractor brought civil RICO claims against two building inspectors who extorted kickbacks in exchange for government contracts. The *Terminate* plaintiff, a maintenance company that had previously been awarded work, refused "to accede to [defendants'] kickback demands" and was denied subsequent projects. *Id.* at 1339. The Second Circuit upheld the jury's damages award to plaintiff because "the attempted extortions were a substantial factor in the sequence of responsible causation, and ... [plaintiff's injuries were] reasonably foreseeable or anticipated as a natural consequence." *Id.* at 1346 (citations and quotation marks omitted).

Just as the hiring of illegal workers and extortionate acts were the proximate cause of the injuries alleged in *Commercial Cleaning* and *Terminate,* the Defendants' alleged pattern of racketeering activity was the proximate cause of Astech–Marmon's damages, not Coyne's false statement about the availability of City asbestos work. In the same manner that the Second Circuit refused in *Commercial Cleaning* to analytically segregate the defendant's illegal hiring scheme from its reduced labor costs, this court declines to draw an arbitrary distinction between Coyne's statement and the Defendants' allegedly illegal actions.[3] Rather, the court

finds that Coyne's statement was "clearly foreseen and anticipated as the virtually inevitable result [of the Defendants' and the Association's illegal enterprise and] *did not operate to break the chain of proximate causation*" between the Defendants' racketeering activity and Astech–Marmon's alleged injury. *Id.* (emphasis added).

## II. *Damages*

### A. *Legal Standard*

 A plaintiff in a private civil RICO action must allege a compensable injury that is concrete. *See Hecht,* 897 F.2d at 24. A speculative injury, an injury to an intangible property interest, or a future injury are not legally sufficient. *See Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1104–06 (2d Cir.1988) (future damages arising from racketeering activity are "unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable"). But if a plaintiff can prove that it lost a contract because of a racketeering scheme, it is entitled to be compensated for that injury. *See, e.g., Terminate,* 28 F.3d at 1343 (upholding damages award to contractor for lost profits from municipal contract).

### B. *Analysis*

 The Defendants contend that Astech–Marmon has not pleaded a concrete injury because it is speculative to infer that the City would have necessarily hired Astech–Marmon, even if the Defendants had not corrupted the bidding process. In particular, they point out that Astech–Marmon never submitted an actual bid, produced work plans, or took any threshold step to secure the City work at issue. Defendants also assert that Astech–Mar-

---

**3.** The court notes that the Defendants, unlike defendants in a typical civil RICO suit, have already been convicted and sentenced in federal court for criminal RICO violations.

mon's damages claim is inherently unprovable because the award of a municipal contract hinges on several indeterminate factors.

■ At this juncture in the litigation, the Defendants' argument is premature. Although it is axiomatic that a plaintiff must plead concrete damages, Fed. R.Civ.P. 12(b)(6) does not require a complaint to plead the amount of damages with mathematical precision. *See Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1171 (9th Cir.2002) (drawing a distinction between "uncertainty in the fact of damage and in the amount of damage"). Here, the complaint sufficiently alleges that Astech–Marmon suffered a tangible injury as a result of the Defendants' actions. Astech–Marmon alleges, among other things, that (1) it was the only Connecticut-licensed asbestos abatement company with its principal place of business in Bridgeport; (2) it enjoyed preferential bidding status that allowed it to obtain City contracts even when it was not the lowest bidder; (3) it had been previously awarded City asbestos contracts; (4) it was qualified, ready, and able to provide the services needed by the Clean and Green program; and (5) if it had been given the opportunity to bid, its bid would have been substantially lower than the inflated amounts actually charged by Chem Scope, AAIS, and AAIS–Petco. These factual allegations, particularly Astech–Marmon's status as the sole City asbestos contractor with bid preferences, sufficiently state a claim for lost profits. Thus, the court finds that Astech–Marmon should have the opportunity to discover evidence showing that it would have been awarded these contracts and reaped profits if Defendants had not subverted the municipal bidding process.

Finally, there is no merit to the Defendants' contention that Astech–Marmon's damages are too speculative simply because it never submitted a bid for the asbestos work at issue. The Defendants stress that the *Commercial Cleaning* plaintiff, unlike Astech–Marmon, alleged in its complaint that it participated in the bidding process and actually submitted the second lowest bid. The court, however, does not construe *Commercial Cleaning* as requiring a plaintiff to bid on a contract to claim RICO injury. Such a formalistic reading of *Commercial Cleaning* would ignore not only how Defendants corrupted the City bidding process, but also the Second Circuit's admonition that courts should avoid applying a "mechanical test detached from the policy considerations ... at play in [a civil RICO] case." *Commercial Cleaning*, 271 F.3d at 381. Thus, the court declines to reward the Defendants for their allegedly illegal conduct by immunizing them from civil RICO liability.

In sum, the court finds that Astech–Marmon's complaint sufficiently alleges a claim for concrete damages proximately caused by Defendants' illegal acts.

### CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss Astech–Marmon's complaint [Doc. # 23] is DENIED.