Joseph DeFALCO, Eleanor De Falco, Robert Brown, Janice Brown, Top of the World Estates, Inc., and Jobo Associates, Inc., Plaintiffs,

v.

William DIRIE, John Bernas, John Bernas, Inc., JML Quarries, Inc., V. Edward Curtis, Alfred Steppich, Richard Ferber, Terry Kelly, William C. Rosen and George Lahm, Defendants.

No. 90 Civ. 5732 (BDP).

United States District Court, S.D. New York.

March 14, 1996.

Robert Dembia, Levine & Dembia, New York City, for Plaintiffs.

James J. Harrington, James J. Harrington & Associates, New York City, for Defendant John Bernas.

David E. Worby, Patrick M. Reilly, White Plains, NY, for Defendants Alfred Steppich, Richard Ferber, Donald Meckle, Terry Kelly and Patrick Reilly.

Jack McBride, Goshen, NY, for Defendants.

PARKER, District Judge.

This case involves four claims comprising (1) RICO, (2) 42 U.S.C. § 1983, (3) conversion by extortion, and (4) Article 78, brought by Plaintiffs, real estate developers, against town officials and individuals in the Town of Delaware in Sullivan County, New York. Defendants have all made motions in connection with the RICO claim to either dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or for sum-

mary judgment pursuant to Fed.R.Civ.P. 56 [1]
.

## PARTIES

Plaintiff, Top of the World Estates, Inc. ("TOP"), is the owner and developer of approximately 1450 acres of land in the Town of Delaware which is located in Sullivan County, New York. Located on this property is a residential development known as "Top of the World".

Plaintiff, JOBO Associates, Inc. ("JOBO"), owns 250 acres adjoining the TOP property which is used as a sand and gravel bank.

The individual Plaintiffs, Joseph DeFalco, Eleanor DeFalco, Robert Brown and Janice Brown are the principal officers, directors and shareholders of both TOP and JOBO.

Defendant William Dirie was the elected Supervisor of the Town of Delaware from January 1986 to December 1991. In this position, Dirie served as a member of the Town Board and as a member of the Town Legislature.

Defendant John Bernas is a contractor and owner of Defendant JML Quarries, Inc., ("JML") and Defendant John Bernas, Inc. ("JBI").

Defendant V. Edward Curtis was appointed Chairman of the Delaware Planning Board from 1964 to December 1994. He is also engaged in the nursery and landscaping business.

Defendant Alfred Steppich was the appointed Building Inspector of Delaware from 1986 to 1991.

Defendant Richard Ferber was an elected Tax Assessor for the Town of Delaware from 1976 to 1994 and was Chairman of the Delaware Tax Assessors from 1990 to 1994.

Defendant Donald Meckle was an elected Tax Assessor for the Town of Delaware from 1978 to 1993 and was Chairman of the Delaware Tax Assessors from 1979 to 1990.

Defendant Paul Rouis was the appointed Sullivan County Administrator from 1977 to June 1993.

Defendant Harry Fisher was at all relevant times an overseer of the Plaintiffs' business operations.

Defendant Terry Kelly was at all relevant times chief engineer of the Town of Delaware.

Defendant William Rosen was the appointed Town Attorney for the Town of Delaware from 1986 to December 1991. He was also Sullivan County Attorney from 1988 to 1991.

Defendant George Lahm has, and continues to be, the Town Highway Superintendent for the Town of Delaware since 1976.

The complaint alleges that the Defendants, an assortment of public officials, private individuals and corporations have extorted large sums of money and property through misuse of certain public offices.

In 1987, TOP and JOBO purchased 1700 acres of land in Delaware Township. The bulk of the land is being developed as a residential community, the remainder is used as a sand and gravel pit. Plaintiffs allege that Defendant William Dirie, Supervisor of the town of Delaware, told them that he could assure prompt issuance of all approvals and permits if they complied with his demands.

Plaintiffs claim that this action arises out of a conspiracy, plan and scheme among the defendants to use the Town of Delaware as a racketeering enterprise to extort large sums of money, and to further extort real and personal property, and/or interests therein, in violation of 18 U.S.C. § 1962(c).

## MOTIONS TO DISMISS

█ Defendants first move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) as not stating a claim upon which relief can be granted. On a dismissal motion for failure to state a claim, the general rule is that the allegations in the Plaintiffs' complaint are deemed to be true and must be liberally construed in the light most favorable to the Plaintiffs. *Dahlberg v. Becker,* 748 F.2d 85,

---

1. Although Defendants have made individual motions, and not all Defendants made both a motion to dismiss and a motion for summary judgment,

I refer to Defendants and their individual motions collectively for purposes of simplicity and clarity.

88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A complaint should not be dismissed unless it appears beyond a reasonable doubt that the Plaintiffs cannot in any way establish a set of facts to sustain a claim which would permit relief. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980), *Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir.1986). However, "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could [grant relief] ... fails to state a claim under Rule 12(b)(6)." *Martin v. New York State Dept. of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

Plaintiffs have adequately pled a RICO violation as to all the named Defendants for purposes of this motion to dismiss. A reasonable trier of fact could find a pattern of racketeering activity and Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) therefore denied.

■ The Second Circuit has outlined the various components of any § 1962 RICO violation: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate commerce or foreign commerce. See *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub. nom., Moss v. Newman,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). *Browning Avenue Realty Corp. v. Bernard J. Rosenshein,* 774 F.Supp. 129, 136 (S.D.N.Y.1991) (Sweet).

More generally,

[t]he RICO civil liability provision confers standing on "any person injured in his business or property by reason of a violation of Section 1962." 18 U.S.C. § 1964(c). Thus, in order to have standing, a plaintiff must show: (1) a violation of 1962; (2) injury to business or property; and (3) causation of the injury by the violation.

*Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23 (2d Cir.1990) (citation omitted).

Construing the factual allegations of the second amended complaint in the light most favorable to Plaintiffs, Plaintiffs have alleged an adequate and colorable cause of action under RICO. The three elements set forth above in *Hecht* have been satisfied.

■ The first prong of the *Hecht* test requires that there be a violation of 18 U.S.C. 1962. "Congress did not deploy RICO as an instrument against all unlawful acts. It targeted only predicate acts catalogued under section 1961(1)." *Id.* at 25. 18 U.S.C. § 1961(1) defines racketeering activity as:

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, ....., which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of Title 18 United States Code: .... Section 1951 (relating to interference with commerce, robbery, or extortion).....

18 U.S.C. § 1961(1).

Plaintiffs have adequately pled claims involving extortion and violations of 18 U.S.C. § 1951, including Grand Larceny pursuant to New York Penal Law 155.30(6), 155.35, 155.40, and Receiving Bribes pursuant to New York Penal Law 200.10, and 200.11, against each of the moving Defendants. These alleged predicate acts clearly constitute racketeering activity as defined by 18 U.S.C. § 1961.

■ In order to find a violation of § 1962, a district court must also determine whether Plaintiffs "independently allege both an enterprise—a group of persons in an ongoing association—and a pattern of racketeering activity—a series of allegedly criminal acts." *Procter & Gamble v. Big Apple Industrial Buildings, Inc.,* 879 F.2d 10, 15 (2d Cir.1989).

Enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Evidence of an ongoing organization, the associates of which function as a continuing unit, suffices to prove an enterprise." *Id.* at 15. This minimal standard has been met by

Plaintiffs. Plaintiffs claim the Town of Delaware in Sullivan County is the RICO enterprise being used by the individual Defendants to extort money and property from Plaintiffs. The Town of Delaware falls within the enterprise definition and Defendants do not dispute this. Defendants argue, however, that because certain Defendants were not actually employed by the Town that these Defendants cannot be included under the RICO claim. I disagree. Plaintiffs need only allege that Defendants were associated directly or indirectly with the enterprise. 18 U.S.C. § 1962(c). Plaintiffs have adequately alleged that each and every Defendant, if not employed by the Town, was at least indirectly associated with the Town.

■ Plaintiffs must next allege that the Defendants engaged in a pattern of racketeering activity. In order to properly allege that Defendants were engaged in a pattern of racketeering activity, Plaintiffs must plead

that each defendant either committed or aided and abetted the commission of at least two RICO predicate acts, and that the alleged predicate acts related to each other and 'amount to, or ... otherwise constitute a threat of, continuing racketeering activity.' *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 [240], 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989).

*Attick v. Valeria Associates*, 835 F.Supp. 103, 112 (S.D.N.Y.1992).

■ Plaintiffs have satisfied the above burden for purposes of a motion to dismiss. Plaintiffs, in the detailed complaint, allege that Defendants, working in concert, knowingly committed at least two predicate acts in order to continuously extort money, property and goods from Plaintiffs. Working together, Defendants are alleged to have threatened Plaintiffs with unfavorable action concerning the TOP's residential development if certain demands were not met. For instance, Dirie threatened unfavorable tax assessments if Plaintiffs did not permit one of Ferber's relatives to cut and remove firewood and timber from the TOP's property. Dirie demanded that Plaintiffs hire Fisher as their foreman and buy him a new truck. Dirie demanded that Plaintiffs hire Bernas and his corporations to put in all the roads

for the development. Dirie represented that if Plaintiffs hire Bernas, all roads would be immediately and unconditionally approved by the Town of Delaware. Dirie also demanded that Bernas and his corporations be permitted to draw free sand and gravel from Plaintiffs' sand and gravel bank. (Second Amended Complaint (SAC) Par. 10–11 at 15–17). Plaintiffs allege Dirie violated 18 U.S.C. § 1951 and N.Y.Penal Law 155.30(6), 155.35, 155.40, 200.10 and 200.11. (SAC at 47).

Fisher, upon being hired as foreman, demanded that his two sons also be hired to work on the TOP property. Fisher stated that if Plaintiffs refused to hire his sons, unfavorable action would be taken by the Town of Delaware. When Plaintiffs attempted to fire Fisher, Bernas and Dirie demanded that Plaintiffs re-hire Fisher or face the consequences of being unable to obtain any further permits from the Town of Delaware. When Plaintiffs refused, an immediate shutdown of all permits otherwise required by Plaintiffs to continue business operations took place, and Plaintiffs were forced to re-hire Fisher. (SAC Par. 12–17 at 17–19). Plaintiffs allege Fisher violated 18 U.S.C. § 1951 and N.Y.Penal Law 155.30(6), 155.35, and 155.40. (SAC at 55–56).

Bernas advised Plaintiffs that if he were not permitted to continue mining activities he would cause the Town of Delaware to not issue any further permits for roads on the TOP development. Bernas also demanded that one-third of the capital stock of JOBO be conveyed to Bernas and JBI or again, it would be impossible for Plaintiffs to obtain any cooperation or permits from the town boards and agencies. (SAC Par. 20 at 21). Plaintiffs allege Bernas, JBI, and JML violated 18 U.S.C. § 1951 and N.Y.Penal Law 155.30(6), 155.35, and 155.40. (SAC at 48–49).

Curtis made various demands upon Plaintiffs threatening unfavorable Planning Board action if they did not comply. Among the demands, Curtis demanded that Plaintiffs use an architectural firm and engineering firm designated by Curtis. When Plaintiffs refused, Curtis saw to it that Plaintiffs would receive no further permits of any kind from

the Planning Board of the Town of Delaware. (SAC Par. 30–33 at 24–25). Plaintiffs allege Curtis violated 18 U.S.C. § 1951 and N.Y.Penal Law 155.30(6), 155.40, and 200.10. (SAC at 49–50).

Steppich allegedly demanded money from Plaintiffs in return for issuing building permits. Upon Plaintiffs' refusal to pay the extortionate funds, Steppich refused to issue any further permits, and caused Plaintiffs to unnecessarily dig up and/or redo work which had been properly performed in the first instances. (SAC Par. 34–36 at 26). Plaintiffs allege Steppich violated 18 U.S.C. § 1951 and N.Y.Penal Law 155.30(6) and 200.10. (SAC at 50).

Ferber coerced Plaintiffs to pay his relative, Ray Ferber, to clear and remove timber from the TOP property, when in fact, Ray Ferber should have been required to pay the Plaintiffs for this timber. When Plaintiffs fired Ray Ferber, Defendant Ferber along with Defendant Meckle, as tax assessors, caused Plaintiffs' real property to be over-assessed. (SAC Par. 37–40 at 27–28). Plaintiffs allege Ferber violated 18 U.S.C. § 1951 and N.Y.Penal Law 155.30(6), 155.40 and 200.10. (SAC at 51–52).

Meckle advised Plaintiffs that if they spent a considerable sum of money in a particular sporting goods store owned by Meckle, Plaintiffs would receive favorable tax treatment from the Town of Delaware. Meckle further demanded a cash payment from Plaintiffs and when Plaintiffs refused, Meckle, along with Ferber, caused Plaintiffs' real property to be over-assessed for tax purposes. (SAC Par. 41–43 at 28–29). Plaintiffs allege Meckle violated 18 U.S.C. § 1951 and N.Y.Penal Law 155.30(6), 155.40 and 200.10. (SAC at 52–53).

Rouis, a certified public accountant, coerced Plaintiffs to retain him as the accountant for TOP and JOBO under threats of unfavorable action by County and Town officials. Rouis also allegedly falsified the tax records of TOP in order to cover up wrongdoing of Bernas. (SAC Par. 44–46 at 30–31). Plaintiffs allege Rouis violated 18 U.S.C. § 1951 and N.Y.Penal Law 155.30(6), 155.40, 155.45 and 200.10. (SAC at 53–54).

Kelly advised Plaintiffs that unless Plaintiffs acquiesced to Bernas' extortionate demands for the transfer of the JOBO stock, Kelly would not grant any permits or approvals for any further construction of roads. Kelly also advised Plaintiffs that unless Plaintiffs agreed to convey the entire JOBO gravel pit to Bernas, no further permits or approval of any kind would be issued to TOP and, in fact, refused to issue such permits or approvals when Plaintiffs did not convey the pit. (SAC Par. 47–48 at 31–32). Plaintiffs allege Kelly violated 18 U.S.C. § 1951 and N.Y.Penal Law 155.30(6), 155.40, and 200.10. (SAC at 57).

William Rosen in bad faith rejected a bond necessary for the approval of road construction on the TOP property, in order to thwart Plaintiffs' developmental progress. The rejection was allegedly in retaliation for Plaintiffs' unwillingness to comply with certain other extortionate demands by Defendants. Rosen also allegedly refused to return said bond from May to December 1990. (SAC Par. 56 at 38–41). Rosen allegedly failed to disclose during a public hearing that Plaintiffs held a restrictive covenant prohibiting the use of certain property as a garbage dump. This property, which was the subject matter of the public hearing, was intended to be used a garbage dump by the County of Sullivan. (SAC at 41–42). Plaintiffs allege William Rosen violated 18 U.S.C. § 1951 and N.Y.Penal Law 200.12. (SAC at 60–61).

Lahm purportedly repeatedly executed written "departmental approvals" for the payment of money to Bernas' companies for sand and gravel removed for free from Plaintiffs' property. Lahm's assistance was instrumental in permitting Bernas to steal and secrete the sand and gravel. Lahm took actions to prevent Plaintiffs from going forward with the development project as a direct result of Defendants' extortionate demands. (SAC Par. 57(a)–(i) at 44–46). Plaintiffs allege Lahm violated 18 U.S.C. § 1951 and N.Y.Penal Law 200.12. (SAC at 61–62).

This is by no means a complete or exhaustive list of the alleged predicate acts. The complaint comprises 83 paragraphs going through each Defendants' associations and

activities. Suffice it to say that the accepted-as-true allegations in the complaint refute the view that Defendants' fraudulent actions toward Plaintiffs were unrelated or disconnected. The complaint illustrates a scheme by the Defendants working in concert to use the Town of Delaware as a means by which to extort money and property from Plaintiffs.

Plaintiffs' RICO claim adequately alleges facts demonstrating a knowing agreement involving each of the Defendants to commit at least two predicate acts. *See Metro Furniture Rental, Inc. v. Michael Alessi,* 770 F.Supp. 198 (S.D.N.Y.1991).

Finally, Plaintiffs' allegations

satisfy the criteria for relatedness necessary for establishing a pattern as summarized in *Procter & Gamble* in terms of similarity of goals, methods of accomplishing those goals, repetitiousness and closeness of temporal proximity between [each Defendants'] acts in furtherance of some goal.

*Browning* at 144.

After a thorough review of Plaintiffs' second amended complaint, I find that Plaintiffs' allegations support the purported enterprise and pattern of racketeering activity necessary to find a violation of § 1962(c). The first prong of the *Hecht* test, is therefore satisfied.

■ The second prong of the *Hecht* test, requires a showing of an injury to Plaintiffs' business or property. Section 1964(c) of Title 18 of the United States Code only authorizes a private suit by "any person injured in his business or property by reason of a violation of § 1962."

Plaintiffs have satisfactorily pled injury to business or property resulting from Defendants' racketeering activity. Plaintiffs' allegations of injury include, but are not limited to:

Extortion by Defendants of firewood, timber, gravel and sand worth hundreds of thousands of dollars.

Extortion by Defendants of one third of the capital stock of JOBO.

Demands by Defendants that Plaintiffs expend large amounts of money to purchase "gifts" for specified people.

Unfavorable action by the Town boards and agencies in retaliation for not complying with Defendants' demands, including denying or delaying required building permits, certificates of occupancy, over-estimating tax assessments, etc.

Plaintiffs have alleged facts adequately demonstrating losses caused by the predicate acts of each Defendant, thereby satisfying the second prong of *Hecht.*

The third prong of the *Hecht* test requires a showing that any alleged injury was caused by the racketeering activity of Defendants.

■ Plaintiffs claim that the racketeering conduct violating § 1962 caused injury in the form of actual lost profits and damages from delayed building permits and occupancy certificates. Unlike, *Hecht,* these damages are not too speculative to confer standing. Plaintiffs have clearly alleged that the injury to their business and property was caused directly by the extortionate demands and acts of bribery by each Defendant. Therefore, the third prong of *Hecht* has been satisfied.

Plaintiffs have satisfied the elements necessary to adequately plead a claim of RICO for purposes of a motion to dismiss. Therefore, Defendants' motions to dismiss are denied.

## MOTIONS FOR SUMMARY JUDGMENT

■ Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Cronin v. Aetna Life Insurance Company,* 46 F.3d 196, 202 (2d Cir. 1995). The standard for summary judgment "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue

of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the opposing party "propounds a reasonable conflicting interpretation of a material disputed fact" summary judgment must be denied. *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9–10 (2d Cir.1983).

I have reviewed all the submissions in connection with the motions for summary judgment and it is clear that the parties' versions of events differ substantially. For example:

Dirie denies coercing Plaintiffs into hiring Fisher and demanding that they buy him a truck. Dirie claims that Plaintiffs voluntarily allowed him to remove timber from the TOP's property, while Plaintiffs claim that they were forced to do so by threats of unfavorable Town action. He denies employing violence or making threats in order to extort money and/or property. (Dirie Affidavit 2/15/95).

Bernas claims that at no time did he or his two corporations (JBI and JML) extort one-third of the capital stock of JOBO from Plaintiffs, he claims that Plaintiffs voluntarily transferred the stock. He further denies ever extorting sand, gravel or any other personal or real property from Plaintiffs by means of actual or threatened adverse action. (Bernas Affidavit 2/13/95).

Fisher claims he never used force or threats in order to receive a new truck and other "gifts" from Plaintiffs and further disputes the allegation that he had any influence over any town agencies or boards. Fisher also refuses to concede the truth of any aspect of DeFalco's affidavit. (Fisher Affidavit 4/19/95).

Curtis denies ever using threats of adverse town action to coerce Plaintiffs to purchase nursery stock from him, or demanding that Plaintiffs hire specified architectural and engineering firms. (Curtis Affidavit 2/10/95).

Meckle claims that he never told DeFalco that if DeFalco paid him a sum of money ($10,000), he would make his tax problems go away. Meckle also denies demanding that DeFalco spend money in his sporting goods store in return for a favorable tax assessment. (Meckle Affidavit 2/23/95).

Steppich denies ever soliciting payment from anyone for issuing permits as the Building Inspector. He further alleges that, but for one time, he never refused to issue a building permit or certificate of occupancy in connection with any of the TOP developments. He claims he had no knowledge of the business dealings between DeFalco and Bernas, and did not even know JOBO existed. (Steppich Affidavit 2/23/95).

Rouis denies ever coercing Plaintiffs to hire him as their accountant or coercing Plaintiffs to hire Robert Rosen as their attorney. He denies ever coercing Plaintiffs to transfer to Bernas or JBI any portion of Plaintiffs' real or personal property by instilling fear in Plaintiffs or by any other method. He also denies ever knowingly falsifying any tax record or financial statement in connection with the TOP development to cover up wrongdoing of Defendants. (Rouis Affidavit 2/21/95).

William Rosen denies any wrongdoing in connection with refusing Plaintiffs' $200,000 bond needed to complete the road development. He further denies any wrongdoing in connection with the County of Sullivan's location for a dump sight and denies failing to disclose Plaintiffs' restrictive covenant. (William Rosen Affidavit 2/23/95).

Lahm denies any involvement in unlawfully removing gravel from Plaintiffs' gravel pit or any other extortionate scheme aimed at Plaintiffs. Lahm claims that he was named as a Defendant purely as a retaliatory measure for testifying during a trial in the Sullivan County Supreme Court between Bernas and DeFalco. (Lahm Affidavit 2/23/95).

Ferber denies ever deliberately over-assessing Plaintiffs' property as a Tax Assessor, or threatening to do so if certain demands were not met. He denies ever making demands or threats upon any Plaintiff or coercing DeFalco to enter into a contract with Ray Ferber, Defendant Ferber's relative. (Ferber Affidavit 2/23/95).

Kelly denies that he ever participated in or had any control over actions by the Town of

Delaware. He further denies knowledge of business arrangements between Bernas and DeFalco having to do with the gravel bank or the JOBO stock. He denies making threats or demands to anyone or ever withholding issuance of any permit or approval. (Kelly Affidavit 2/23/95).

I could continue, however, basically every aspect of the complaint and Plaintiffs' affidavits are disputed. The very core of this case is in question: whether or not Plaintiffs freely and voluntarily entered into various agreements with each of the Defendants, or whether Plaintiffs were coerced through extortion, threats and bribery.

Defendants have failed to convincingly establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The motions for summary judgment therefore are denied.

Defendants' motions are addressed to the entire complaint. However, there are three claims ((1) 42 U.S.C. § 1983, (2) conversion by extortion, and (3) Article 78) in the second amended complaint which were not made part of Defendants' moving papers. Judge Goettel in a Memorandum Decision dated April 24, 1991 ruled on these three claims in response to a motion to dismiss the first amended complaint. Although Plaintiffs have since amended the complaint for a second time, nothing in the second amended complaint changes Judge Goettel's original rulings.

■ First is Plaintiffs' claim of constitutional violations under 42 U.S.C. § 1983. Judge Goettel dismissed this claim in an order dated April 24, 1992 stating that:

Although, plaintiffs do not assert which federally secured right was infringed by the defendants' actions, it is readily apparent from the complaint that the plaintiffs are complaining of the deprivation of their property, specifically, wood, money, gravel and sand by the defendants who used the authority of their various offices to coerce this property from the plaintiffs. Plaintiffs do not, however, allege that they were deprived of this property without due pro-

cess of law and this count must therefore be dismissed for failing to state a claim. (Judge Goettel's April 24, 1991 Memorandum Decision at 14).

In the Second Amended Complaint, Par. 74, Plaintiffs state that they were deprived of property, to wit firewood, timber, money, sand, and gravel, without due process of law. (SAC Par. 74 at 67). "[A] complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could [grant relief] ... fails to state a claim under Rule 12(b)(6)." *Martin v. New York State Dept. of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

Plaintiffs make nothing more than a bald assertion, with no factual allegations to support a claim under 42 U.S.C. § 1983. Therefore, Plaintiff's § 1983 claim is dismissed without leave to amend as this is already Plaintiffs' second amended complaint. Dismissal with prejudice is proper when the complaint has been previously amended. *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir.1990).

■ Plaintiffs next plead "conversion by extortion". In accordance with Judge Goettel's Memorandum Decision of April 24, 1991, Defendants' motions to dismiss this cause of action are denied:

Plaintiffs allege that the Bernas defendants obtained money and property from them by extortionate methods. Specifically, they assert that Bernas told the plaintiffs that they must turn over one third of the JOBO stock to him and allow his companies to mine sand and gravel from JOBO property or else he would use his influence with Supervisor Dirie to delay and deny necessary development and building permits. Plaintiffs allege that the resulting transfer of property was accomplished by Bernas through "the wrongful use of threatened force, violence and fear under the color of official right" and that these activities were "violations of 18 U.S.C. § 1951." Complaint, Par 37(a) [Second amended complaint, Pars. 77–80].

Conversion is the wrongful exercise of dominion or control over goods belonging to another. *Fraser v. Doubleday & Co.*

**482**

*Inc.,* 587 F.Supp. 1284, 1288 (S.D.N.Y. 1984). The Bernas defendants argue this conversion claim must be dismissed because plaintiffs have failed to adequately plead a RICO case. However, we have not dismissed the RICO case against the Bernas defendants..... This count will not be dismissed.

(Judge Goettel's April 24, 1991 Memorandum Decision at 15–16).

Lastly, Plaintiffs bring a cause of action under Article 78. Again, following Judge Goettel's Memorandum Decision of April 24, 1991, Defendants' motion to dismiss this claim are denied. Judge Goettel dismissed this count as to Bernas, JBI, JML, Fisher, and Rosen because they are private parties and there have been no allegations that any administrative action has been taken in their favor. N.Y.Civ.Prac.L. & R. 7802(c). In the second amended complaint, Plaintiffs assert this claim only against Defendants Dire, Curtis, Steppich, Ferber, Meckle, Rouis, Kelly, W. Rosen, and Lahm in this cause of action.

### CONCLUSION

In conclusion, Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted are denied; Defendants' motions for summary judgment pursuant to Fed. R.Civ.P. 56 are denied; and Defendants' motion to dismiss Plaintiffs' claim pursuant to 42 U.S.C. § 1983 is granted.

SO ORDERED.