**Irving H. PICARD, Plaintiff,**

v.

**Sonja KOHN, Erwin Kohn, Robert Kohn, Rina Hartstein, Moishe Hartstein, Mordechai Landau, Erko, Inc., Eurovaleur, Inc., Infovaleur, Inc., Tecno Development & Research S.R.L., Tecno Development & Research Ltd., Shlomo Amselem, Hassans International Law Firm, Herald Asset Management Ltd., 20:20 Medici AG, Peter Scheithauer, Robert Reuss, Unicredit Bank Austria AG, Gerhard Randa, Stefan Zapotocky, Bank Austria Worldwide Fund Management Ltd., Ursula Radel–Leszczynski, Unicredit S.p.A., Alessandro Profumo, Pioneer Global Asset Management, S.P.A., et al., Palladium Capital Advisors LLC, Windsor IBC, Inc., Mariadelmar**

Raule, Franco Mugnai, Paul de Sury, Daniele Cosulich, Absolute Portfolio Management Ltd., Medicifinanz Consulting GmbH, Medici S.R.L., Medici Cayman Island Ltd., Bank Medici AG (Gibraltar), Revitrust Services Est., Helmuth Frey, Manfred Kastner, Josef Duregger, Andreas Pirkner, Werner Tripolt, Andreas Schindler, Friedrich Kadrnoska, Werner Kretschmer, Wilhelm Hemetsberger, Harald Nograsek, Bank Austria Cayman Islands Ltd., Gianfranco Gutty, Sofipo Austria GmbH, M–Tech Services GmbH, Brera Servizi Aziendiale S.R.L., Redcrest Investments, Inc., Line Group Ltd., Line Management Services Ltd., Line Holdings Ltd., Herald Consult Ltd., John and Jane Does 1–100, Defendants.

No. 11 Civ. 1181 (JSR).

United States District Court,
S.D. New York.

Feb. 22, 2012.

Timothy Pfeifer, Denise Dorothy Vasel, Marco Molina, Baker & Hostetler LLP, New York City, NY, for Plaintiff.

Franklin B. Velie, Sullivan & Worcester LLP, Susan Leslie Saltzstein, Jeremy A. Berman, Mark Alan McDermott, Skadden, Arps, Slate, Meagher & Flom LLP, Eliot Lauer, Curtis, Mallet-Prevost, Colt & Mosle, LLP, New York, NY, Marco Enrique Schnabl, William John O'Brien, III, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, DC, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

In a 177–page Second Amended Complaint ("SAC"), Irving Picard (the "Trustee"), as trustee for the estate of Bernard L. Madoff Investment Securities LLC ("Madoff Securities"), sues the dozens of defendants listed above for, among much else, violations of the Racketeer Influenced

and Corrupt Organizations Act ("RICO") (Counts One and Two) and common law claims of unjust enrichment, conversion, and money had and received (Counts Twenty through Twenty–Two). On July 25, 2011, four—UniCredit S.p.A. ("UniCredit"), Pioneer Global Asset Management S.p.A. ("Pioneer"), UniCredit Bank Austria AG ("Bank Austria"), and Alessandro Profumo—moved to dismiss Counts One, Two, Twenty, Twenty–One, and Twenty–Two of the Complaint as to them.[1] The parties extensively briefed the relevant issues, and the Court heard oral argument on October 5, 2011. Having now fully considered the matter, the Court hereby grants the defendants' motions in their entirety.

With respect to Counts Twenty, Twenty–One, and Twenty–Two of the SAC, this Court has already held as a matter of law that the Trustee lacks standing to bring common law claims such as those advanced in these three counts. *See Picard v. HSBC Bank PLC*, 454 B.R. 25, 37 (S.D.N.Y.2011) ("[T]he Trustee does not have standing to bring his common law claims either on behalf of customers directly or as bailee of customer property, enforcer of SIPC's subrogation rights, or assignee of customer claims . . . ."). Judge McMahon of this District subsequently reached the same conclusion. *See Picard v. JPMorgan Chase & Co.*, 460 B.R. 84, 106 (S.D.N.Y.2011) ("The Trustee lacks standing to pursue the common law claims against Defendants."). Accordingly, the Court dismisses Counts Twenty, Twenty–One, and Twenty–Two, with prejudice, as to the four moving defendants.

With respect to Counts One and Two, *i.e.*, the RICO claims, the SAC alleges an extensive criminal enterprise centered around Sonja Kohn, which it dubs the "Medici Enterprise." SAC ¶ 1. Exploiting her relationship with Bernard Madoff, Kohn allegedly used the purported enterprise to feed $9.1 billion of investments into Madoff Securities (the "Money In" component), in return for kickbacks that Madoff and Kohn fraudulently disguised as payments for research (the "Money Out" component). *Id.* ¶¶ 13, 19. Based on this conduct, the Trustee alleges that various defendants conducted (Count One) and conspired to conduct (Count Two) the Medici Enterprise's affairs through a pattern of racketeering activity consisting of money laundering, money transactions involving property known to be derived from unlawful activity, wire fraud, financial institution fraud, mail fraud, transportation of funds taken by fraud, transportation of persons to defraud, receiving funds taken by fraud, and violation of the Travel Act. *Id.* ¶ 7, 571. The Trustee asserts that, by these crimes, defendants "fed, perpetuated, and profited from" Madoff Securities' Ponzi scheme. *Id.* ¶ 4. Because Madoff Securities' Ponzi scheme allegedly "could not have continued for as long as it did" without defendants' assistance, the Trustee seeks to recover the entire $19.6 billion lost by investors in Madoff Securities. *Id.* ¶ 8. Under RICO, damages would be trebled. *Id.*

As to the four moving defendants, the Trustee alleges that UniCredit, Pioneer, Bank Austria, and Profumo primarily participated in the conduct of the "Money In" component of the purported enter-

---

1. The motions were originally addressed to the First Amended Complaint, but in a telephonic conference between the parties and Chambers on August 25, 2011 the Trustee requested leave to submit the SAC containing additional factual allegations. The Court allowed the Trustee to submit the SAC. Because the parties thereafter treated the motion to dismiss as directed at the SAC, the Court recognizes the SAC as the authoritative complaint and hereby orders it docketed.

prise. The "crux" of the "Money In" component consisted of attracting investors to supposedly diversified investment funds that, in reality, did nothing more than feed money into Madoff Securities. *Id.* ¶¶ 19–24. To attract investors, members of the purported enterprise allegedly " 'conspired to conceal' " the feeder funds' true natures, engaging in "deception." *Id.* ¶ 21. Moreover, because members of the purported enterprise pretended to oversee the feeder funds' supposedly diversified investments, they received hundreds of millions of dollars in fees from their customers. *Id.* ¶ 22.

Specifically, Bank Austria allegedly conspired with Kohn and others to market Primeo Fund, a Madoff Securities feeder, as a diversified fund of funds when, in reality, it invested exclusively with Madoff. *Id.* ¶ 341. According to the SAC, Bank Austria received at least $55 million in fees based on investment in Primeo Fund. *Id.* ¶ 359. Bank Austria also allegedly helped Kohn acquire a banking license for Bank Medici, which allowed Bank Medici to set up its own Madoff investment vehicles. *Id.* ¶ 394. The SAC alleges that one of these investment vehicles, Herald Asset Management ("HAM"), allowed Bank Austria to funnel an additional $1.5 billion into Madoff Securities. *Id.* ¶ 398.

Similarly, the SAC alleges that, beginning in 1999, Pioneer offered multiple opportunities to invest in Madoff Securities, including feeder funds related to Kohn. *Id.* ¶ 461. According to the SAC, UniCredit purchased Pioneer in May 2000 and acquired Bank Austria and Bank Medici in 2005. *Id.* ¶¶ 462, 464. Following the latter acquisitions, UniCredit and Pioneer allegedly identified concerns and defects— *e.g.,* the absence of written contracts between Primeo and Madoff Securities—associated with those of their new funds that invested exclusively with Madoff. *Id.* ¶ 467. The SAC alleges that, in response to these concerns, UniCredit and Pioneer attempted to disguise the fact that Primeo invested exclusively with Madoff. *Id.* ¶ 468. Moreover, UniCredit allegedly stifled criticism of its investments with Madoff Securities. For example, the SAC alleges that UniCredit fired John Absood, an analyst who identified defects in UniCredit's relationship with a Madoff feeder fund. *Id.* ¶ 484. According to the SAC, Absood initiated a wrongful termination suit. *Id.* Other internal documents questioning UniCredit's decision to acquire access to Madoff through Kohn were allegedly suppressed or ignored. *Id.* ¶ 485.

Finally, Profumo was the CEO of UniCredit from 1997 to 2010. *Id.* ¶ 143. He allegedly enjoyed a "close working relationship" with Kohn. *Id.* ¶ 141. According to the SAC, he may have received an email describing Absood's concerns about Madoff's lack of transparency. *Id.* ¶ 482.

For the most part, the SAC only vaguely hints at what role, if any, the four moving defendants played in the "Money Out" component of the purported enterprise. The SAC does allege that, in order to disguise her kickbacks from Madoff Securities, Kohn billed Madoff Securities for research that her employees either plagiarized or simply made up. *Id.* ¶ 13. According to the Trustee, Kohn set up several sham entities in New York, such as Infovaleur and Erko, that had no legitimate purpose and existed only to receive payments from Madoff Securities for fake or plagiarized research. *Id.* ¶¶ 269–281. A Bank Austria employee allegedly gave Kohn access to one of Bank Austria's proprietary databases, and Kohn allegedly plagiarized some of her sham entities' research from this database. *Id.* ¶ 14.

 Turning to the RICO claims, under 18 U.S.C. § 1964(c) and § 1964(d), plaintiffs lack standing to bring these RICO claims unless the "defendant's injurious conduct is both the factual and the

proximate cause of the injury alleged." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir.2003). Proximate cause, in this context, refers not to the foreseeability of harm to a plaintiff, but instead to the directness of the relationship between the purported enterprise's alleged criminal acts and the plaintiff's injuries. *McBrearty v. Vanguard Group, Inc.*, 353 Fed.Appx. 640, 641–42 & n. 1 (2d Cir.2009). Acts that merely "furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act" do not directly cause that injury, and thus do not proximately cause it. *DeSilva v. North Shore–Long Island Jewish Health Sys., Inc.*, 770 F.Supp.2d 497, 524 (E.D.N.Y.2011) (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F.Supp. 576, 587 (S.D.N.Y.1995)).

Here, as noted, the Trustee alleges that the purported criminal conspiracy and conduct "fed, perpetuated, and profited from [Madoff Securities'] Ponzi scheme." SAC ¶ 4. This is the kind of causal assertion that is too indirect to satisfy the proximate cause requirement of § 1964(c). The Trustee acknowledges that Madoff Securities operated independently of defendants' conduct, instead alleging only that defendants extended Madoff Securities' duration by providing it with a "flood of cash." *Id.* ¶ 8. Because the injury Madoff Securities' investors suffered "could have happened independently" of the "flood of cash" by which defendants merely "facilitated" Madoff Securities' operations, the Trustee has failed to plead proximate cause, and thus lacks standing to bring claims under RICO.

Arguing that he has pled proximate cause, the Trustee cites a discussion in *Holmes v. SIPC*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992), of three reasons why courts insist on a tight showing of direct causation to support RICO standing: (1) "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors"; (2) "recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries"; and (3) "the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely." 503 U.S. at 269–70, 112 S.Ct. 1311.

Contrary to the Trustee's arguments, however, each of these reasons favors finding that the Trustee has not here pled proximate cause. First, neither the Court nor any jury has any reliable method of ascertaining how much damage Madoff Securities would have caused if it had not allegedly received a "flood of cash" from defendants. Any attempt to estimate that amount of damage would have to consider such imponderable counterfactuals as whether Madoff Securities might have obtained funds from other sources and how much earlier Madoff Securities would have been caught or entered bankruptcy without defendants' alleged contributions. Second, neither the Court nor any jury has any reliable method for apportioning damages among Madoff Securities' investors. How much should Madoff Securities' investors who invested before the advent of HAM in 2004 receive compared to those who invested afterwards? Finally, the Court lacks a reason to "grapple with these problems" since those who invested in Bank Austria's, UniCredit's, and Pioneer's Madoff Securities feeder funds have direct causes of action for fraud, in Europe if not in the United States. In other

words, application of the very reasons that *Holmes* identified for the tight requirement of proximate cause in RICO cases here indicates that the Trustee has not satisfied that requirement. Accordingly, the Court finds that the Trustee lacks standing to bring the RICO claims, and dismisses those claims as to the four moving defendants.

■ The Trustee's RICO claims fail for another, independent reason, namely that, after the Court excludes allegations in the SAC that it cannot consider under the so-called 'RICO amendment' set forth in the Private Securities Litigation Reform Act ("PSLRA"), the SAC fails to state any RICO claim. Under the RICO amendment, "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). The Second Circuit has recently held that this language bars civil RICO claims, including claims for wire and mail fraud, "alleging predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud action against the defendant." *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir.2011); *see also* H.R. Rep. 104–369, at 41 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 746 (noting that RICO amendment would bar plaintiffs from "plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud"). The Second Circuit also quoted with approval the Third Circuit's holding that the RICO amendment bars RICO claims based on conduct that perpetuates a Ponzi scheme. *MLSMK*, 651 F.3d at 277 n. 11 ("[C]onduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities." (quoting *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir.1999))).

■ In connection with the "Money In" component of the purported enterprise, the SAC alleges not only that UniCredit, Pioneer, Bank Austria, and Profumo kept Madoff Securities' Ponzi scheme alive, but also that they did so by "conspir[ing] to conceal" the fact that their funds' only fed into Madoff Securities, engaging in "deception" in order to attract investors—who could have invested with Madoff Securities directly—to Primeo, HAM, and other feeder funds. SAC ¶ 21. As a result, under *MLSMK*, the PSLRA's RICO amendment prevents the Trustee from basing his RICO claims on any conduct related to the "Money In" component of the purported scheme.[2]

The Trustee argues that the PSLRA does not bar prosecution here because the connection between the foreign investors and Madoff Securities is too attenuated to support a claim under the Securities Exchange Act based on Madoff Securities' fraud. *See Anwar v. Fairfield Greenwich Ltd.*, 728 F.Supp.2d 372, 399 (S.D.N.Y. 2010) (finding that the relationship between Madoff Securities and an investor in a fund that fed money to Madoff Securities so attenuated that it "snaps even the most flexible rubber bands"). Nonetheless, the Second Circuit has made it clear that the RICO Amendment does not apply only

---

2. The Trustee suggests that *MLSMK* and *Bald Eagle* should not apply here because the defendants' actions perpetuated the Ponzi scheme merely by providing money, much as if they had invested the proceeds of armed robbery in Madoff Securities. But this argument ignores the fact that, here, the defendants obtained the money they provided by engaging in conduct that could be prosecuted as securities fraud. That the Trustee characterizes this conduct as wire fraud does not matter. H.R. Rep. 104–369, at 41 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 746.

where a valid fraud claim exists as an alternative to a RICO claim. *MLSMK,* 651 F.3d at 277 (barring a RICO claim "even where a plaintiff cannot itself pursue a securities fraud action against the defendant"). Moreover, as the Court's previous discussion of standing shows, the Court would have to altogether pervert existing doctrine to arrive at an interpretation of the RICO amendment that prevented those like the plaintiff in *MLSMK,* who were directly injured, from invoking RICO, but allowed the Trustee to sue for indirect injury based on the same facts.

Next, the Trustee argues that the Securities Exchange Act, and thus the RICO amendment, does not apply to financial products that, like those the defendants sold here, did not trade on an American exchange. *See Morrison v. Nat'l Australia Bank Ltd.,* — U.S. —, 130 S.Ct. 2869, 2884, 177 L.Ed.2d 535 (2010) ("[I]t is in our view only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which § 10(b) applies.").[3] According to the Trustee, then, even though he can neither prosecute foreign securities fraud nor base a RICO claim on domestic securities fraud, he can base a RICO claim on the prosecution of foreign securities fraud. In effect, the Trustee would fashion a RICO exception to the Exchange Act's territorial reach, allowing artfully pled prosecution of foreign conduct that constitutes securities fraud whenever such conduct potentially relates to alleged RICO enterprise activity occurring in the United States.[4] The implausibility of this exception is highlighted by the fact that, in order not to exceed RICO's territorial reach, the foreign securities fraud must constitute . racketeering activity conducted in furtherance of an at least partly domestic enterprise, yet, in order not to offend the PSLRA, the enterprise's domestic activity cannot include securities fraud. This is too clever by half and would in many cases allow artful pleading to eviscerate either the territorial reach of the Securities Exchange Act or the purpose of the "RICO Amendment" to the PSLRA. The Court therefore rejects the Trustee's argument and holds that the Trustee cannot predicate the RICO claims against UniCredit, Pioneer, Bank Austria, and Profumo on any conduct related to the "Money In" component of the purported scheme, because such conduct falls within the scope of the PSLRA's prohibition.[5]

■■■ Excluding all allegations related to the "Money In" component of the purported scheme, the Trustee's remaining allegations utterly fail to state a claim under Fed.R.Civ.P. 12(b)(6), To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

---

**3.** RICO itself has its own extraterritorial limitations, *see Norex Petroleum Ltd. v. Access Indus., Inc.,* 631 F.3d 29, 33 (2d Cir.2010); *see also Cedeno v. Intech Grp., Inc.,* 733 F.Supp.2d 471, 473 (S.D.N.Y.2010), *aff'd sub nom. Cedeno v. Castillo,* 457 Fed.Appx. 35 (2d Cir.2012), but the Trustee argues that the "Money Out" component of the purported enterprise included American participants, and thus that the enterprise has sufficient contacts with the United States to support a RICO claim.

**4.** As described below, the SAC does not claim that UniCredit, Pioneer, Bank Austria, or Pro-

fumo meaningfully participated in the allegedly domestic "Money Out" component of the Enterprise.

**5.** For example, the allegation that Kohn "kicked back" $10 million to Pioneer in order to "invest Primeo Fund through Herald Fund" clearly relates to the allegation that the defendants disguised the nature of the Funds' investments with Madoff Securities. SAC ¶ 479. Because such alleged disguises and payments perpetuated the "Money In" component of the purported scheme, the Court, under *Bald Eagle,* must disregard them.

that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl., Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. In the context of RICO, to state a claim under 51962(c), a plaintiff must allege a defendant's "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco v. Bernas,* 244 F.3d 286, 306 (2d Cir.2001) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Similarly, to state a claim for RICO conspiracy under § 1962(d), a plaintiff must allege "some factual basis for a finding of a conscious agreement among the defendants." *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 4 (2d Cir.1990).

Yet, other than suggesting that Kohn plagiarized some of Bank Austria's research, the SAC provides almost no indication that UniCredit, Pioneer, Bank Austria, and Profumo meaningfully participated in the "Money Out" component of the purported enterprise. *See* SAC Ex. B (suggesting only that Bank Austria received a $2,000 transfer from Infovaleur in 2002).

 Choosing an example at random, the SAC alleges that UniCredit established, three insurance companies in Liechtenstein, SAC ¶ 498. Kohn allegedly communicated with UniCredit officials about these companies and, through Bank Medici and HAM, ultimately invested $5.3 million in them. *Id.* ¶¶ 498–503. Nonetheless, the creation and funding of companies does not qualify as a predicate offense under RICO. Claiming that UniCredit's actions did constitute such an offense, the Trustee alleges that "[o]n information and belief," UniCredit allowed Kohn to use these companies "as a mechanism to transfer stolen Customer Property from Bank Medici and HAM to a jurisdiction remote from the impending ... collapse" of Madoff Securities. *Id.* ¶ 503. Moreover, without providing additional detail, the Trustee alleges that these companies "triggered a criminal investigation in Liechtenstein." *Id.* ¶ 506. These allegations have exactly the conclusory character that *Twombly* and *Iqbal* find inadequate. Under *Twombly,* where several different theories might explain the same conduct, a complaint must provide a factual basis for the specific theory on which its legal claims rely. *See Twombly,* 550 U.S. at 557, 127 S.Ct. 1955 ("[w]hen allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action."). Here, the Trustee has made factual allegations concerning only the defendants' creation and financing of three companies. To justify his chosen interpretation of this conduct—*i.e.,* that Kohn and UniCredit created and financed these companies *in order to* hide assets they knew Madoff Securities had stolen from customers—the Trustee relies on "information and belief" and vague references to foreign criminal investigations, references that mention neither what conduct prompted the investigation, nor what crimes foreign authorities alleged, nor even that the investigation related, in any way, to UniCredit's evasion of claims by Madoff Securities' customers.

Those of the Trustee's allegations that do not relate to the "Money In" component of the purported enterprise all suffer from this same defect: rather than using factual allegations to show that Bank Austria, UniCredit, Pioneer, and Profumo conducted the affairs of an enterprise through a pattern of racketeering activity, the SAC begs

the fundamental question, invoking the specter of a purported enterprise in order to give a sinister cast to its paltry, and otherwise unexceptional, factual allegations. As a result, the conduct the Trustee alleges lacks the "further factual enhancement" it needs to suggest that these defendants engaged in racketeering activity, much less that such activity constituted a pattern or that defendants conducted the larger enterprise that the Trustee posits. *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955. For the same reasons, the Trustee's allegations fail to provide "some factual basis for a finding of a conscious agreement among the defendants." *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 182 (2d Cir.2004) ("Finally, because Plaintiffs did not adequately allege a substantive violation of RICO[,] ... the District Court properly dismissed [a parallel claim alleging] a RICO conspiracy in violation of 18 U.S.C. § 1962(d)."). Thus, stripped of allegations relating to the "Money In" component of the purported scheme, the SAC fails to state a claim under either § 1962(c) or § 1962(d), and the Court dismisses Counts One and Two accordingly.

In sum, for the reasons stated above, the Court hereby dismisses, with prejudice, Counts One, Two, Twenty, Twenty–One, and Twenty–Two of the SAC against UniCredit, Pioneer, Bank Austria, and Profumo. The Court further directs the return of what remains of adversary proceeding No. 10–05411(BRL) to the Bankruptcy Court for further proceedings consistent with this Memorandum Order, The Clerk of the Court is ordered to close docket numbers thirty-eight, forty, and forty-four on the docket of this case.

SO ORDERED.