*Aghaeepour v. Northern Leasing Systems, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of April, two thousand twenty-six.

PRESENT:
> SUSAN L. CARNEY,
> BETH ROBINSON,
> MYRNA PÉREZ,
> > *Circuit Judges*.

_____

ELAINE AGHAEEPOUR, MICHELE NORRIS,

> *Plaintiffs-Counter-Defendants-Appellants*,

ELAINE BARRETT, ASHLEY GLASGOW, BRUCE DRAGO, HONG ZHANG, DEBORAH WILSON, ANNE BARR,

> *Plaintiffs*,

JULIE HIGGINS, JESUS RIVERA, RAY SCHILBER, SHANE MOORE,

> *Plaintiffs-Counter-Defendants*,

v.                                    No. 25-548

NORTHERN LEASING SYSTEMS, INC., MBF LEASING, LLC,
LOUIS CUCINOTTA, JAY COHEN, JENNIFER CENTENO, AKA
JENNIFER NUGENT, SARA KRIEGER, JOSEPH I. SUSSMAN,
JOSEPH I. SUSSMAN, P.C.,

        *Defendants-Counter-Claimants-Appellees*,

LEASE FINANCE GROUP, LLC,

        *Defendant-Counter-Claimant*.[*]

_____

FOR PLAINTIFFS-COUNTER-              KEITH ALTMAN, The Law Office of
DEFENDANTS-APPELLANTS:               Keith Altman, Farmington Hills,
                                     MI.


FOR DEFENDANTS-COUNTER-              HILLEL IRA PARNESS, Parness Law
CLAIMANTS-APPELLEES:                 Firm, PLLC, New York, NY.


    Appeal from a judgment of the United States District Court for the Southern

District of New York (Nelson S. Román, *Judge*).

    **UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment, entered on February 5, 2025, is

**AFFIRMED**.

_____

[*] The Clerk's office is respectfully directed to amend the caption as reflected above.

2

Plaintiffs-Counter-Defendants-Appellants Elaine Aghaeepour and Michele Norris ("Plaintiffs") appeal the judgment of the district court, which, following a jury verdict for Plaintiffs, entered judgment as a matter of law under Fed. R. Civ. P. 50 in favor of Defendants-Counter-Claimants-Appellees Northern Leasing Systems, Inc., MBF Leasing, LLC, Louis Cucinotta, Jay Cohen, Jennifer Centeno, Sara Krieger, Joseph I. Sussman, and Joseph I. Sussman, P.C., (collectively, "Defendants") on all of Plaintiffs' claims. Plaintiffs alleged civil violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d); the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681b(f); the New York FCRA, N.Y. Gen. Bus. L. §§ 380-b and 380-o; and New York consumer protection law, N.Y. Gen. Bus. L. § 349. Plaintiffs claimed that Defendants participated in a fraudulent scheme to improperly collect from Plaintiffs lease payments for credit card processing equipment that Plaintiffs did not legitimately owe because their purported signatures on the leases were forged.

As relevant here, after a jury returned a verdict in favor of Plaintiffs on each claim, the district court granted Defendants' Rule 50 motion for judgment as a matter of law on the basis that Plaintiffs had failed to present sufficient evidence that the equipment leases at issue were forged by or with the knowledge of

3

Defendants—a fact that was essential to Plaintiffs' various claims. *See Aghaeepour v. Northern Leasing Systems, Inc.*, 763 F. Supp. 3d 580, 588–95 (S.D.N.Y. 2025). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

We review without deference a district court's decision on a Rule 50 motion for judgment as a matter of law and must "consider the evidence in the light most favorable to the non-moving party," giving that party "the benefit of all reasonable inferences that the jury might have drawn" in its favor. *Matusak v. Daminski*, 165 F.4th 702, 711 (2d Cir. 2026).[1] A Rule 50 motion "may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008). A reviewing court "may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Id.*

---

[1] In quotations from caselaw, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

4

## I.      RICO Claims

Plaintiffs sued for damages under 18 U.S.C. § 1964(c) based on Defendants' alleged violations of 18 U.S.C. §§ 1962(c) and (d).  Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise [engaged in or affecting interstate commerce], to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  Section 1962(d) prohibits conspiracies to violate the above provision.

For purposes of RICO liability, the meaning of "enterprise" includes "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).[2]

---

[2] Citing this Court's decision in *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004), the district court held that Plaintiffs failed to establish a RICO enterprise because they did not prove a "common *fraudulent* purpose."  *See Aghaeepour*, 763 F. Supp. 3d at 588–91 (emphasis added).  As this Court recently clarified, the statement in *First Capital Asset Management* that an enterprise must be made up of individuals that "share a common purpose to engage in a particular *fraudulent* course of conduct" was only "ancillary to a discussion regarding the nexus requirement between an enterprise and racketeering activity and was merely dicta"; if read as a holding, the statement would contradict both *United States v. Turkette*, 452 U.S. 576 (1981) and *United States v. Mazzei*, 700 F.2d 85 (2d Cir. 1983).  *United States v. Kelly*, 128 F.4th 387, 410–11 (2d Cir. 2025), *cert. denied*, 145 S. Ct. 2820 (2025).  Though the district court improperly required Plaintiffs to prove a common fraudulent purpose, for the reasons set forth in this decision, their RICO claims fail for other reasons.

In addition to proving that an enterprise exists, a plaintiff must also prove that the defendant engaged in "a pattern of racketeering activity." 18 U.S.C. § 1962(c). This requires proof of at least two predicate acts of racketeering activity within 10 years. *See id*. § 1961(5). Predicate acts include, as relevant here, mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See id*. § 1961(1). Mail fraud and wire fraud in turn require proof of: "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004). A scheme to defraud, in turn, requires proof "that the defendant acted with fraudulent intent." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017). Finally, to prove a RICO claim, a plaintiff must establish "a sufficient nexus between the enterprise and the racketeering activity." *United States v. Kelly*, 128 F.4th 387, 409 (2d Cir. 2025), *cert. denied*, 145 S. Ct. 2820 (2025).

Plaintiffs' theory at trial was that the independent service organizations ("ISOs"), on-the-ground salespeople who secured from customers signed leases for credit card processing equipment and then sold the leases to Defendants, forged Plaintiffs' names on leases by copying and pasting Plaintiffs' signatures from other documents. The ISOs then submitted the forged leases to Defendants,

who collected the lease payments and pursued unpaid obligations under the leases.

In support of their claim that their signatures had been forged, both Plaintiffs testified that (1) they did not sign the leases at issue, even though the signatures on the leases generally looked like their signatures; (2) they had signed other documents, such as an equipment delivery receipt and a check, from which their signatures may have been taken; and (3) they informed Defendants at some point in the course of the collections process that they had never signed their leases, but Defendants' collections efforts continued.

Assuming that is sufficient evidence to prove that the signatures on Plaintiffs' leases were forged, Plaintiffs point to no evidence that *Defendants* forged the signatures or *knew* they were forged. *See United States v. Greenberg*, 835 F.3d 295, 305–06 (2d Cir. 2016) (explaining that the wire fraud statute requires proof of a "scheme or artifice to defraud, . . . which itself demands a showing that the defendant possessed a fraudulent intent"); *United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006) (same for mail fraud). Plaintiffs did not contest that the ISOs' contracts with Defendants warranted that the ISOs would deliver leases that were duly authorized and executed, and Plaintiffs identified no evidence that any of the

Defendants knew the ISOs had breached these warranties. Moreover, Plaintiffs conceded that they did not even *try* to establish that Defendants were legally responsible for the ISOs' actions, including any forgery, through an agency relationship.

Nor did Plaintiffs establish that Defendants knew that the leases at issue were forged when they continued their collection efforts *after* Plaintiffs reported that they had not signed the leases. Norris testified that she refused to complete and return the "affidavit of forgery" sent to her after she complained to the company. And Aghaeepour testified in general terms that she notified the company that the leases were forged, but she did not testify with any particularity as to when she made that report and to whom.

Because Plaintiffs offered no evidence that Defendants forged their signatures or were aware that the leases they were acting upon were fraudulent, Plaintiffs cannot prove the predicate acts of wire and mail fraud required to succeed on their RICO claim. For the same reasons, Plaintiffs cannot establish their RICO conspiracy claim under § 1962(d). *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) (explaining that "the core of a RICO civil conspiracy is an agreement to commit predicate acts").

## II. FCRA Claims

Plaintiffs' FCRA claims, under both federal and New York law, fail for a similar reason: Plaintiffs did not prove that Defendants negligently violated the statutes. The federal FCRA prohibits obtaining a consumer report for any purpose that is not authorized under 15 U.S.C. § 1681b. 15 U.S.C. § 1681b(f). The FCRA authorizes consumer reporting agencies to furnish a consumer report to a person who has a "legitimate business need" for the information "in connection with a business transaction that is initiated by the consumer." *Id*. § 1681b(a)(3)(F). An individual aggrieved by negligent noncompliance with FCRA can sue for damages. *See id*. § 1681o.

New York's FCRA ("NYFCRA") likewise authorizes a civil suit for negligent noncompliance with the statute's requirements, including that a person may not request a consumer report without a legitimate purpose, may not knowingly and willfully introduce false information into a consumer's credit files for the purpose of wrongfully damaging the consumer's credit information, and must provide advance notice to the consumer. N.Y. Gen. Bus. L. §§ 380-b, 380-m, 380-o.[3]

---

[3] The respective statutes also authorize a suit with more robust potential damages for willful noncompliance. 15 U.S.C. § 1681n; N.Y. Gen. Bus. L. § 380-l. The jury returned a verdict for Defendants on the willful violation claims, so they are not before us here.

9

Plaintiffs' evidence falls short of establishing FCRA and NYFCRA claims because they did not prove that any of the Defendants negligently violated any of these provisions.

Plaintiff Aghaeepour offered no testimony that any Defendant improperly pulled her credit report or made adverse reports about her. Plaintiff Norris testified that Defendant Northern Leasing pulled her credit report without her permission numerous times in 2014, after her purported lease expired and while litigation was pending. She did not recall whether Northern Leasing had made any adverse entries on her credit report.

To establish that Northern Leasing—or any other Defendant—is liable on the basis of this evidence, Plaintiffs must show that the Defendants pulled their credit reports for illegitimate reasons or introduced false information into their reports, and that they were negligent with respect to the wrongfulness of their actions. Plaintiffs offered no evidence that Northern Leasing or any other Defendant knew, or even should have known, that the signature on Norris's lease was forged, as she declined to return the form attesting to her claim. And there is no evidence that any Defendant took any relevant action regarding Aghaeepour's reports. Thus, Plaintiffs failed to show that Northern Leasing or any other

Defendant pulled their credit reports for an illegitimate reason or introduced false information into their reports to wrongfully damage their credit information.

## III. New York General Business Law § 349

A claim under the New York General Business Law § 349 requires proof of "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business." N.Y. Gen. Bus. L. § 349. Plaintiffs claim that Defendants' actions with respect to the leases were deceptive, which would require Plaintiffs, under a "reasonable consumer standard," to demonstrate that the actions "tend[] to mislead reasonable consumers acting reasonably." *Bustamante v. KIND, LLC*, 100 F.4th 419, 426 (2d Cir. 2024). Without proof that Defendants forged the leases or were aware of the forgeries, Plaintiffs cannot prove that Defendants were engaged in deceptive practices.

## IV. Exclusion of Evidence

Plaintiffs challenge the district court's evidentiary ruling prohibiting Plaintiffs from introducing at trial evidence that a New York court ruled in a different case that Northern Leasing had engaged in fraud in connection with the equipment leases. *See People v. Northern Leasing Systems, Inc.*, 133 N.Y.S.3d 389 (2020), *aff'd*, 142 N.Y.S.3d 36 (2021) (concluding that Northern Leasing and various

11

affiliates engaged in fraud under New York Executive Law § 63(12) by deceiving or "creat[ing] an environment conducive to fraud"). Even if this evidence had been admissible, it would not remedy the absence of essential evidence with respect to Plaintiffs' particular claims, as described above. For that reason, even if the district court had erred in its evidentiary ruling, any error would be harmless. *See Tesser v. Board of Education of City School District of City of New York,* 370 F.3d 314, 319 (2d Cir. 2004) (explaining that in a civil case the burden falls on an appellant to show an error was not harmless and that "it is likely that in some material respect the factfinder's judgment was swayed by the error").

To the extent Plaintiffs contend not only that the evidence should have been admitted, but also that the New York court's ruling has preclusive effect in *this* case, we reject their argument. Plaintiffs can use the New York court's ruling as a sword in this case only if the "issue decided in the prior proceeding is identical to the issue *as to which preclusion is sought*." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 82 (2d Cir. 2019). The issue decided in the New York case is not identical to the relevant issue here.

In that case, the New York court concluded that many of the Defendants committed fraud as defined in New York Executive Law § 63(12). That law does

not require proof of bad faith or scienter; rather, it requires only proof of an act that "tends to deceive or create an environment conducive to fraud." *Northern Leasing*, 133 N.Y.S.3d at 403. In contrast, to prove their RICO claim here, Plaintiffs must prove that Defendants acted with fraudulent intent. *See Weaver*, 860 F.3d at 94. And to establish their claims under New York's deceptive practices statute, Plaintiffs must show that Defendants engaged in "[u]nfair, deceptive, or abusive acts or practices." N.Y. Gen. Bus. L. § 349. Because the issue decided in the *Northern Leasing* case is not identical to any issue in this case, preclusion does not apply.

\* \* \*

For the above reasons, the judgment is **AFFIRMED**.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court